IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM H. DAWES, JR.,

         Plaintiff,

 vs.                   Case No. 2:23-cv-02005-EFM-TJJ

STATE OF KANSAS,

         Defendant.

**Motion for Summary Judgment and Brief in Support**

Defendant State of Kansas moves for summary judgment pursuant to Fed.R.Civ.P. 56 and D.Kan. Rule 56.1.

**Nature of the Case**

Plaintiff Dawes alleges to have been subjected to unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*., when Dawes was terminated from employment with the Kansas Highway Patrol ("KHP"). Dawes refused to be interviewed and answer questions when instructed to do so as part of an investigation. Dawes was dismissed from employment because of Dawes's refusal. Dawes alleges the reasons given for Dawes's dismissal were pretextual and the termination was because Dawes disclosed being transgender.

**Statement of Facts**

1. Dawes worked for the KHP as a civilian employee assigned to General Headquarters, located in Topeka, KS. Dawes was a Public Service Admin II assigned to facilities

management in the Fiscal Services section from March 8, 2021, until June 7, 2022. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶¶ i, ii.

2.    Dawes voluntarily disclosed his status as a transgender individual to three KHP staff during his employment. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ vii. These persons were: Shellbie Blodgett, KHP's Director of Human Resources, (*id*., at ¶ viii); Sandy Crowell, a co-worker, (Exhibit 2, *Dawes dep*., 14:20 – 15:7); and Sherry Macke, Dawes' direct supervisor. (*Id*., at 16:6-17:7; 18:5-20; 19:9-18).

3.    Dawes initiated a meeting with HR Director Blodgett to discuss the process for Dawes to transfer from a male to a female identity at work. *Id*., 20:13-21:2.

4.    Dawes believed the disclosures were made in confidence. Exhibit 2, *Dawes dep*., 16:1-3; 21:14-22.

5.    However, following Dawes's disclosure, Macke contacted her supervisor, Maj. Eric Sauer. Maj. Sauer alerted KHP Col. Herman Jones, and a meeting was arranged with Col. Jones, Assistant Superintendent Jason DeVore, KHP's General Counsel Luther Gaineany, HR Director Blodgett, and Maj. Sauer. The attendees discussed Dawes' planned transition and KHP's responsibilities in accommodating Dawes through the process in an effort to ensure KHP's preparedness. Exhibit 5, *Jones dep*., 17:16-18:25; 19:4-23. The participants elected to seek advice and additional information relating to training from the Kansas Department of Administration. *Id*.

6.    Dawes remained unaware this meeting occurred until after the lawsuit commenced. Exhibit 2, *Dawes dep*., 21:13-22.

**Dawes Inappropriate Conduct**

7.    At 1:53 p.m. on June 6, 2022, Dawes emailed a female co-worker, C. K., because Dawes had noticed her while eating lunch. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ ix. The

email said:

> ███, Just a note to tell you that I think you look absolutely amazing today! I was eating my lunch in the lobby of Jayhawk, and I just happened to glance out the window where I saw this amazing woman walking across the street…and it was you! Lol. I've told you this before, but you are truly a breath of fresh air! Please don't ever stop expressing yourself. It is beautiful for me to see a woman so comfortable expressing her femininity. I absolutely LOVE your heels, BTW…I'm jealous! (Please know that I'm honestly not flirting with you…although if I were 30 years younger, I might seriously consider that option, lol. I find you inspirational, and I wanted you to know.) You made my day. Thank you!

Exhibit 3, *June 6 Email*.

8.   After having second thoughts about sending the email, Dawes walked from Dawes' office across the street to C.K's office to discuss the email with her. Exhibit 2, *Dawes dep.*, 25:25-26:24.

9.   Dawes returned to Dawes' office without talking to C.K. because she was engaged in conversation with a co-worker. *Id*., 27:3-16; 28:8-12.

10.  Documentation reflects that, on June 6, 2022 at 2:59 p.m., C.K. reported the email and Dawes's visit to supervisor Cpt. Mitchell Clark and stated she felt uncomfortable and interpreted Dawes's comments as unwelcome sexual advances. Exhibit 3, *June 6 Email*; Exhibit 4, *Harassment Report*.

11.  The documentation reflects that C.K. also reported an additional encounter with Dawes approximately one month earlier when Dawes said he "appreciated a woman wearing heels and panty hose, and how nice it was to see a female really taking care of herself." Exhibit 4, *Harassment Report*. C.K. stated she felt the comments were very strange because she had not previously spoken with Dawes. *Id*.

12.  The documentation reflects Captain Clark reported C.K's account to his supervisor, Major Eric Sauer, and HR Director Blodgett. Exhibit 4, *Harassment Report*.

13.  Major Sauer related the events to Col. Jones. Exhibit 5, *Jones dep.*, 6:25-7:9; 13:24-

14:16.

**PSU Investigates Dawes's Inappropriate Conduct**

14. On June 7, 2022, Col. Jones assigned the Professional Standards Unit ("PSU") to conduct an administrative investigation into allegations of harassment reported by C.K. involving Dawes that occurred on June 6, 2022. *Id*., 15:11-16. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ x.

15. PSU Captain Dan DiLoreto was assigned to investigate the report of harassment. Exhibit 6, *DiLoreto dep*., 12:4-14. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xi.

16. Dawes was aware of—and agreed to abide by—KHP's policies and procedures. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ v; Exhibit 2, *Dawes dep*., 32:12-32:23 (ROC-09), 35:17-36:9 (ADM-07).

17. KHP Policy ROC-09 prohibits harassment in the workplace. Exhibit 7, *ROC-09*.

18. KHP Policy AAA-02 prohibits sexual harassment in the workplace. Exhibit 8, *AAA-02*.

19. KHP Policy ADM-07 sets forth the procedure for reporting and investigating complaints submitted. Exhibit 5, *Jones dep*., 34:21-35:2; Exhibit 9, *ADM-07*.

20. Section V details the investigative process of a complaint. Exhibit 9, *ADM-07*, p. 5-9.

21. Policy ADM-07 requires the PSU to make every reasonable effort to complete an administrative investigation within 45 calendar days. Exhibit 9, *ADM-07*, § V.O, p. 8.

22. Section V.I details an employee's obligations. It requires full cooperation with the PSU investigation, including a mandate to answer questions as directed, other than those intended to be self-incriminating. Exhibit 9, *ADM-07*, § V.I, pp. 6-7.

23. On June 7, 2022, Dawes was placed on paid administrative leave with pay due to

the sensitive nature of the investigation. Exhibit 5, *Jones dep.*, 21:18-22:9; Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xii.

**The KHP Warned Dawes**

24. On June 7, 20232, Lt. DiLoreto hand-delivered two letters to Dawes and provided the "Employee Conduct Complaint Investigation, Employee's Rights and Responsibilities" notice. Exhibit 10, *PSU Inv. Notice*; Exhibit 11, *EE's R&R*; Exhibit 6, *DiLoreto dep.,* 17:12-18:11; 18:14-18; Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xiii.

25. The Notice of the PSU investigation warned Dawes:

> Per policy, you are directed to give your full cooperation in this matter. Remember, this is a confidential internal investigation requiring maintained confidentiality consistent with agency policy. Understand, you may be asked for statements and be subject to interviews regarding this investigation, and will receive notice, if necessary. As this is an agency administrative review, please remember to maintain confidentiality per policy, and not discuss this investigation to anyone than your attorney, association representative, or immediate family.

Exhibit 10, *PSU Inv. Notice*.

26. The Employee Conduct Complaint Investigation: Employee's Rights and Responsibilities notice advised Dawes:

> You are advised that this complaint will be investigated and that you may be asked to answer questions or submit to certain tests regarding these allegations in accordance with written policies and procedures of the agency, specifically Policy and Procedure ADM-07 titled "Complaint Reporting and Administrative Investigations."
>
> …
>
> During an administrative investigation you may be interviewed and/or directed to provide written reports concerning this incident. Any statements you are directed to make or any information you are directed to provide during an administrative investigation cannot be used against you in any subsequent criminal proceeding. Your refusal to provide these responses, or any untruthfulness in your responses, will be considered insubordination and may subject you to disciplinary action.

Exhibit 11, *EE's R&R*.

27. On June 9, 2022, Lt. DiLoreto instructed Dawes to report to the PSU Office on Monday, June 13 at 1:00 pm for an interview. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xiv. The letter ordered Dawes "You are to give your full cooperation in this matter" and informed Dawes a KOSE representative may also attend if Dawes desired. Exhibit 12, *June 9 Ltr*.

28. On June 13, 2022 at or around 1:00 pm, Dawes arrived at the PSU Office. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xv.

29. Lt. DiLoreto provided Dawes the Garrity/Lefkowitz Warning and gave Dawes time to review the warning. Exhibit 17, *June 13 Interview*,[1] 0:00:23-0:00:59; Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xvi.

30. After Dawes reviewed the warning, Lt. DiLoreto further explained the Garrity/Lefkowitz Warning to Dawes and made clear the interview is compelled. Exhibit 17, *June 13 Interview*, 0:00:59-0:01:08.

31. Dawes acknowledged Dawes understood the requirement and stated, "you'll fire me if I don't talk to you, basically." Exhibit 16, *Transcript of June 13 Interview*; Exhibit 17, *June 13 Interview*, 0:01:09-0:01:12; Exhibit 2, *Dawes dep*., 37:13-37:13.

32. Lt. DiLoreto confirmed Dawes' understanding and said "right," Exhibit 17, *June 13 Interview*, at 0:01:12, but supplemented "this [the Garrity/Lefkowitz Warning] doesn't say we will [fire you], this just lays out consequences for not participating." *Id*., at 0:01:20-24; Exhibit 16, *Transcript of June 13 Interview*.

33. Although Dawes stated, "it certainly implies you will [fire me]." Exhibit 16, *Transcript of June 13 Interview*; Exhibit 17, *June 13 Interview*, at 0:01:20-0:01:24, Dawes refused

---

[1] The authenticity and admissibility of the recording of the June 13 Interview was stipulated by the parties. *Doc*. 25, ¶ 2.b.ii. Exhibit 17 is to be filed conventionally.

to sign the Garrity/Lefkowitz Warning. *Id.*; Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xviii.

34.     Lt. DiLoreto confirmed he would not force Dawes to sign the Garrity/Lefkowitz Warning but reaffirmed Dawes's refusal to answer any interview questions. Exhibit 16, *Transcript of June 13 Interview*; Exhibit 17, *June 13 Interview*, at 0:01:24 - 0:01:38.

**Dawes Violated KHP Policy**

35.     Dawes refused to participate in the interview on June 13, 2022. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xvii.

36.     Dawes did not request the interview be postponed; Dawes stated Dawes "can't" do the interview because Dawes was not prepared. Exhibit 16, *Transcript of June 13 Interview*; Exhibit 17, *June 13 Interview*, at 0:01:38 - 0:02:16.

37.     Lt. DiLoreto warned Dawes that there may not be a future opportunity to be interviewed; Dawes replied, "that's fine." Exhibit 16, *Transcript of June 13 Interview*; Exhibit 17, *June 13 Interview*, at 0:03:39-0:04:13.

38.     Lt. DiLoreto reported to Col. Jones and KHP's General Counsel that Dawes refused to answer the interview questions or sign the Garrity/Lefkowitz Warning. Exhibit 5, *Jones dep.*, 31:14-32:6; Exhibit 6, *DiLoreto dep.*, 30:9-31:15.

39.     There is no record or memory of any other KHP employee refusing to sign the Garrity/Lefkowitz Warning or refusing to be interviewed unless they had resigned prior to the interview. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xxii; Exhibit 6, *DiLoreto dep.*, 32:18-33:20; Exhibit 5, *Jones dep.*, 32:7-33:20; 33:24-34:16; Exhibit 13, *Def Response to 1st ROG*, #7, p. 4.

40.     Col. Jones resolved to discuss the incident with his executive command staff prior to deciding a course of action, although he did consider terminating Dawes immediately and discussed that option with executive command and legal counsel. Exhibit 5, *Jones dep.*, 32:7-

33:16; 38:3-18.

41. The KHP allowed Dawes to reappear for an interview days later because of the agency's obligation to C.K. to fully investigate her allegations. Exhibit 6, *DiLoreto dep.*, 39:2-9; 49:2-13; Exhibit 5, *Jones dep.*, 38:3-18.

42. At the second interview, on June 16, 2022, Dawes signed the Garrity/Lefkowitz warning. Exhibit 14, *Garrity Warning*; Exhibit 2, *Dawes dep.*, 43:5-7.

43. During the June 16 interview, Dawes disclosed to Lt. DiLoreto that Dawes was transgender, Exhibit 6, DiLoreto dep., 42:9-10, and Dawes claimed to have not been in his right mind when sending the email to C.K. *Id.*, 42:14-16.

**KHP Terminated Dawes for Noncompliance**

44. PSU completed the investigation of Dawes's conduct and submitted a final report to Col. Jones and the Executive Staff for review. Exhibit 6, *DiLoreto dep.*, 45:16-46:4; Exhibit 5, *Jones dep.*, 39:9-12.

45. The investigation concluded that Dawes's comments and email to C.K. violated KHP Policy ROC-09 and KHP AAA-02. Exhibit 6, *DiLoreto dep.*, 43:13-16; 44:10-12.

46. Col. Jones determined Dawes's refusal to participate in the initial interview warranted termination. Exhibit 15, *Term Ltr.*; Exhibit 5, *Jones dep.*, 16:14-19; 39:17-23; 42:8-22.

47. Effective July 7, 2022, the KHP terminated Dawes's employment for the refusal to answer questions during the interview with the PSU on June 13, 2022. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xxiv.

48. Dawes's conduct (in sending the email to C.K.) would not have warranted dismissal had Dawes not refused to cooperate in the investigation. Exhibit 5, *Jones dep.*, 40:5-6.

**Argument and Authorities**

Defendant fired Plaintiff Dawes for refusing to cooperate during an administrative

investigation into Dawes's inappropriate communication with a female co-worker. Dawes's status as a transgender person was not a factor in the decision to terminate Dawes's employment. Dawes was dismissed for a legitimate, nondiscriminatory reason. Dawes was not dismissed because of sex or gender. Because there is no evidence of actual discrimination, nor evidence of pretext, Defendant is entitled to summary judgment.

I.   **Standard of Review.**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A question of fact "must be based on more than mere speculation, conjecture, or surmise." *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017). Although this Court must "draw all reasonable inferences in favor of the nonmoving party[,]" an "inference is unreasonable if it requires a degree of speculation and conjecture that renders the factfinder's findings a guess or mere possibility." *Id.* (cleaned up, internal citations omitted).

To survive, Dawes must "identify sufficient evidence requiring submission to the jury." *See Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (internal citations omitted). Dawes must provide more than "a scintilla of evidence to support [their] claim; [they] must proffer facts such that a reasonable jury could find in [their] favor." *See id*. Dawes falls short.

II.  **Dawes violated both policy and a directive that Dawes cooperate during the investigation. Dawes was dismissed for refusing to comply and answer questions during the June 13 interview.**

A.   **The burden-shifting approach under *McDonnell Douglas* applies.**

Title VII of the Civil Rights Act of 1964 prohibits an employer from terminating an employee on the basis of sex. 42 U.S.C.A. § 2000e-2. This includes discrimination against an individual "because of" their transgender status. *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct.

1731, 207 L. Ed. 2d 218 (2020). A plaintiff must provide direct evidence of discrimination or engage in the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). There is no direct evidence of discrimination against Dawes on the basis of sex. Therefore, Dawes bears the initial to establish (1) Dawes is a member of a protected class, (2) Dawes suffered an adverse employment action, (3) Dawes is qualified for the position at issue, and (4) Dawes was treated less favorably than others not in the protected class. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

**B.  Dawes cannot establish a prima facie case. Dawes was not treated less favorably than others not in the protected class.**

Defendant concedes the first three elements—that Dawes is qualified, is a member of a protected class, and suffered an adverse employment action.

Dawes cannot establish that the treatment was less favorable as compared to others not in the protected class. Dawes can point to no person who is not transgender who was treated more favorably than transgender persons. No person has refused to participate in a mandated, *Garrity*-warned interview and remained an employee of the KHP. Thus, Dawes cannot meet his burden of establishing a prima facie case under *McDonell Douglas*.

**C.  Dawes cannot establish pretext. Dawes was dismissed for a legitimate, non-discriminatory reason for which there is no evidence of pretext.**

Without regard to the inability to establish a prima facie case, even if it were assumed that Dawes could meet the burden, the burden then shifts to a defendant to articulate a "legitimate, nondiscriminatory reason" for its decision. *McDonnell*, 411 U.S. at 802. Here, Dawes violated KHP Policy ADM-07 during the PSU's investigation of his reported conduct violative of Policy ROC-09 (prohibiting workplace harassment) and Policy AAA-02 (prohibiting workplace sexual harassment). Col. Jones terminated Dawes for this reason. Exhibit 15, Term Ltr.

**1.  Dawes was dismissed for a legitimate, non-discriminatory reason.**

The purpose of ADM-07 is to "outline responsibilities, authority, policies, and procedures relating to complaints of employee misconduct, and administrative investigations." Exhibit 9, ADM-07. Section V explains the investigative process when a complaint is received and referred to the PSU. *Id.*, at 5-9. Section V.I enumerates employee obligations, including full cooperation (#1), and answering questions other than those potentially self-incriminating (#5). *Id.*, at 6-7.

Dawes received multiple notices KHP's expectations of all employees, as well as numerous warnings of possible consequences for non-compliance. These included:

- Dawes's initial notification and agreement of KHP policies and procedures upon hire and reviewed during the annual performance review process.

- Notice of Administrative Leave with Pay. This document notified Dawes, "Per policy, you are directed to give your full cooperation in this matter. Remember, this is a confidential internal investigation requiring maintained confidentiality consistent with agency policy. Understand, you may be asked for statements and be subject to interviews regarding this investigation, and will receive notice, if necessary."

- The Employee Conduct Complaint Investigation, Employee's Rights and Responsibilities. This document provided "You are advised that this complaint will be investigated and that you may be asked to answer questions or submit to certain tests regarding these allegations in accordance with written policies and procedures of the agency, specifically Policy and Procedure ADM-07 titled "Complaint Reporting and Administrative Investigations." … During an administrative investigation you may be interviewed and/or directed to provide written reports concerning this incident. … Your refusal to provide these responses, or any untruthfulness in your responses, will be considered insubordination and may subject you to disciplinary action."

- The June 9, 2022 letter scheduling an interview on June 13, 2022, stating "This letter is to notify you of your interview with the Professional Standards Unit regarding this investigation. You are directed to be at the Professional Standards office on Monday, June 13, 2022, at 1:00 PM. You are directed to give your full cooperation in this matter."

- The Garrity/Lefkowitz II Warning, which stated "I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties or fitness for duty, you will be subject to disciplinary action which could result in your dismissal from the Kansas Highway Patrol."

- Multiple verbal warnings from Lt. DiLoreto.

Dawes acknowledged, during the June 13 meeting, that refusal would result in termination—noting "you'll fire me if I don't talk to you." Exhibit 2, *Dawes dep.*, 37:13-37:13. The policies advised of every employee's obligation to participate fully in an investigation. Dawes was separately and explicitly advised and warned of his obligation to cooperate and participate. Dawes conceded to having read and understood the policies and warnings. In sum, Dawes's dismissal for his admitted policy violations was, indeed, legitimate, and nondiscriminatory.

    **2.**    **Dawes cannot show his dismissal was a pretext for discrimination on the basis of sex.**

Because Defendant has a legitimate, nondiscriminatory reason for firing Dawes, the burden shifts back to Dawes to evidence pretext for the reason provided. *See McDonnell*, 411 U.S. at 804. Dawes must demonstrate the reasons proffered are implausible, inconsistent, incoherent, or weak to the point that "a rational trier of fact could find the reason unworthy of belief." *Turner*, 563 F.3d at 1143 (internal citations and quotations omitted). Dawes cannot make this showing—there is no evidence of pretext. No other employee that refused to comply with a directive to cooperate and be interviewed remained employed by the KHP. In fact, no other employee actually refused to be interviewed. All prior instances involved an employee resigning in lieu of appearing for the interview.

Dawes cannot meet his burden to show that Dawes's protected status was a determinative factor in the dismissal decision or that the employer's explanation is pretext. *See Khalik v. United Air Lines*, 671 F.3d at 1192.

### Conclusion

For the foregoing reasons, Defendant is entitled to judgment as a matter of law.

    Respectfully submitted,

    **Fisher, Patterson, Sayler & Smith, LLP**
    3550 SW 5th Street | Topeka, Kansas 66606

Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cmoe@fpsslaw.com

**s/David R. Cooper**

| David R. Cooper | #16690 |
| Crystal B. Moe | #29168 |

**Attorneys for Defendant**

### Certificate of Service

I hereby certify that I caused the foregoing to be electronically filed on the 20th day of November, 2023 with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Randall W. Brown, KS #17905 | Stephen C. Thornberry, KS #17494
THORNBERRY BROWN, LLC
4550 Main Street, Suite 205
Kansas City, Missouri 64111
randy@thornberrybrown.com | steve@thornberrybrown.com
Tel: (816) 531-8383 | Fax: (816) 531-8385
ATTORNEYS FOR PLAINTIFF

**s/David R. Cooper**