# WILLIAM H. DAWES, JR.

1    .

2              IN THE UNITED STATES DISTRICT COURT

3                FOR THE DISTRICT OF KANSAS

4    .

5    .

6    WILLIAM H. DAWES, JR.,

7            Plaintiff,

8    .

9       vs.            Case No. 2:23-cv-02005-EFM-TJJ

10   .

11   STATE OF KANSAS,

12           Defendant.

13   .

14                       DEPOSITION OF

15               WILLIAM H. DAWES, JR.,

16   taken on behalf of the Defendant, pursuant to

17   Notice to Take Deposition, beginning at 9:08 a.m.

18   on the 11th day of September, 2023, at the law

19   offices of Thornberry Brown, LLC, 4550 Main

20   Street, Suite 205, in the City of Kansas City,

21   County of Jackson, and State of Missouri, before

22   Barbara J. Hoskinson, Certified Court Reporter,

23   Kansas License No. 0434 and Missouri License No.

24   999.

25   .

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

```
 1                        APPEARANCES
 2    .
 3    .
 4   ON BEHALF OF THE PLAINTIFF:
 5    .
 6        Mr. Randall W. Brown
 7        Thornberry Brown, LLC
 8        4550 Main Street, Suite 205
 9        Kansas City, Missouri, 64111
10        816-531-8383
11        randy@thornberrybrown.com
12    .
13    .
14   ON BEHALF OF THE DEFENDANT:
15    .
16        Mr. David R. Cooper
17        Ms. Crystal B. Moe
18        Fisher, Patterson, Sayler & Smith
19        3550 SW 5th Street
20        Topeka, Kansas, 66606
21        785-232-7761
22        dcooper@fpsslaw.com
23        cmoe@fpsslaw.com
24    .
25    .
```



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# WILLIAM H. DAWES, JR.

```
1                          INDEX

2      .

3      .

4   Certificate---------------------------- 62

5      .

6      .

7                          WITNESS

8   ON BEHALF OF DEFENDANT:                      PAGE

9   WILLIAM H. DAWES, JR.

10  Direct-Examination by Mr. Cooper             4

11     .

12     .

13                         EXHIBITS

14  DEPO EXHIBIT NO.:                            MARKED

15  No 7   KHP org. chart                        9

16  No 8   Charge of Discrimination             22

17  No 9   U.S. DOJ Civil Rights Div.

18         letter 12-16-22                      22

19  No 10  12-28-22 letter to Ganieany

20         from Easterling                      23

21     .

22     .

23     .

24     .

25     .
```

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

## WILLIAM H. DAWES, JR.

1                          WILLIAM H. DAWES, JR.,

2    called as a witness on behalf of the Defendant,

3    was sworn and testified as follows:

4         DIRECT-EXAMINATION

5         BY MR. COOPER:

6         Q.    State your name, please.

7         A.    William Dawes.

8         Q.    Are you a married person?

9         A.    Yes.

10        Q.    How long have you been married?

11        A.    Ten years.

12        Q.    How many times have you been married?

13        A.    Twice.

14        Q.    What were the approximate dates of your

15   first marriage?

16        A.    October of 1989 to sometime in 2013.

17        Q.    What's your spouse's name?

18        A.    Amy.

19        Q.    Are you employed?

20        A.    Yes.

21        Q.    What's your employment?

22        A.    Postal carrier, letter carrier.

23        Q.    Out of what post office?

24        A.    Topeka Sorting and Delivery Center.

25        Q.    When did you become employed by the



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1  United States Postal Service?

2      A.   December of last year.

3      Q.   2022?

4      A.   Correct.

5      Q.   What's your rate of pay?

6      A.   I believe it's 19.33 an hour.

7      Q.   How many hours per week are you

8  scheduled?

9      A.   Excess of 40 every week.

10     Q.   Do you go by William, Will?

11     A.   Bill.

12     Q.   Bill.  Bill, my name is David Cooper.  I

13 am the attorney for the State of Kansas with

14 respect to the lawsuit that's been filed against

15 the State of Kansas on your behalf.  I'm here

16 today to take your deposition to find out what

17 facts you have to offer in support of your claim

18 against the State and ask a variety of questions

19 with regard to that.  Our goal today is for us to

20 have a transcript that you or I or somebody who

21 isn't here today can read and understand.  We have

22 a court reporter taking down every word that's

23 being spoken and in order for us to be able to

24 achieve that goal of being able to understand what

25 you and I said today it's going to be important

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### WILLIAM H. DAWES, JR.

1    that we not talk over each other --

2         A.    Oh, okay.

3         Q.    -- you've done a good job of that, until

4    just now.  I'm going to need a verbal response to

5    all of my questions and not verbal sayings, so,

6    not uh-huh, not huh-uh, things like that, so, if

7    you give me one of those I'm going to ask you if

8    that was a yes or no, fair enough?

9         A.    Okay.

10        Q.    If you do not understand one of my

11   questions, which is a pretty good bet is going to

12   happen today, I want you to tell me you don't

13   understand.  We'll figure it out then and see if I

14   can rephrase the question and figure out the

15   misunderstanding and get to a point where you can

16   answer it.  Fair enough?

17        A.    Okay.

18        Q.    If there's any, anything that I do today

19   that bothers you in any way, shape or form, I talk

20   too loud, too soft, too fast, too slow, I want you

21   to tell me then and there on the record and we'll

22   take care of it, fair enough?

23        A.    Okay.

24        Q.    Where did you go to high school?

25        A.    Monsignor Luckey High School in



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1  Manhattan.  Kansas, not New York.

2      Q.    When did you graduate high school?

3      A.    1983.

4      Q.    What month were you born?

5      A.    February.

6      Q.    What year were you born?

7      A.    1965.

8      Q.    Okay.  So, you got a year and a half on

9  me.  What college degrees or certificates do you

10  hold?

11      A.    Bachelor -- a bachelor's degree from the

12  University of Kansas.

13      Q.    See, that's something, that's a non

14  sequitur right there, a Manhattan graduate going

15  to K.U.  When did you get your bachelor's?

16      A.    May of 1987.

17      Q.    And in what?

18      A.    Journalism.  Radio, TV, film.

19      Q.    Okay, that explains K.U. over K-State.

20  Any other college?

21      A.    No.

22      Q.    What was your employment prior to working

23  for the highway patrol?

24      A.    I was self-employed for approximately six

25  years.



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1      Q.    Doing what?

2      A.    I owned a business called A Whole New

3   Clean, which was -- I specialized in cleaning hard

4   surfaces, tile and grout, carpet, that sort of

5   thing.

6      Q.    And what was your work before that

7   business?

8      A.    I worked for over 20 years in broadcast

9   television in Kansas City.

10     Q.    And why did you leave TV?

11     A.    Computer automation ultimately phased out

12   my job.

13     Q.    And what was it that you did?

14     A.    I was a broadcast engineer, lot of

15   technical -- pushed a lot of buttons and flipped a

16   lot of switches and whatnot.

17     Q.    And why did you apply for a position with

18   the highway patrol?

19     A.    My business was forced to close down.

20   Covid was kind of the death knell for my business,

21   so, it seemed interesting.  I applied for the job

22   and honestly was shocked when I got a phone call

23   they wanted to talk to me again 'cause I didn't

24   feel the interview went very well.

25     Q.    With whom did you interview?



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# WILLIAM H. DAWES, JR.

1      A.   Sherry Macke, who is the, oh, she's the

2  head bean counter.  CFO I believe is her title,

3  chief fiscal officer.  Also Richard Oliva was

4  present and I think there was, there was an

5  officer also present.  I can't recall whom.

6           MR. COOPER:  Sherry is with a Y.  S-H.

7           (THEREUPON, Dawes Deposition Exhibit No 7

8  was marked for identification.)

9      BY MR. COOPER:

10     Q.   I'm going to mark as Deposition Exhibit 7

11 an organizational chart.  At the top it's got the

12 superintendent, Colonel Jones.  In the lower left-

13 hand corner underneath East Region commander Major

14 Sauer, S-A-U-E-R, there's the fiscal division with

15 Sherry Macke.  Is that the same person you just

16 referred to?

17     A.   Correct, yes, sir.

18     Q.   And to what position did you apply?

19     A.   Was a facilities coordinator, I believe

20 Level 2.

21     Q.   I'm not going to ask you what the job

22 description was, I'm going to ask you what it was

23 you actually did as a facilities manager.

24     A.   I think that the State of Kansas

25 considered that a public service, oh, they call it



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### WILLIAM H. DAWES, JR.

1  public service coordinator or something and the

2  slash facilities coordinator.  So, in that role I

3  just -- it was my responsibility to oversee a lot

4  of the facilities across the, throughout the state

5  of Kansas.  The highway patrol had numerous

6  aircraft hangars, office buildings, that sort of

7  thing.  So, if someone's central air stopped

8  working my phone would ring and I would have to

9  call the HVAC people and, you know, if somebody

10  had a pothole in their parking lot that needed

11  repaired, my phone would ring and I would have to

12  contact the, you know, construction people or

13  whatever to get that fixed, and I worked closely

14  with Sherry.

15      Q.    Who was your direct supervisor?

16      A.    It was Sherry Macke.

17      Q.    Do you remember -- when did you start?

18      A.    Gosh.  You know, I cannot recall my start

19  date.  I believe it was in 2021.  I believe it

20  was in March of 2021.

21      Q.    Where did you office?

22      A.    In the same office as -- in the fiscal

23  office with Sherry Macke, Richard Oliva, several

24  accountants.

25      Q.    And what building is the fiscal office

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**WILLIAM H. DAWES, JR.**

1  in?

2      A.   We were -- trying to remember the

3  address.  We were across the street from the main

4  highway patrol building.  It's corner of 7th and

5  Jackson in downtown Topeka.

6      **Q.   But you were in the tower, Jayhawk Tower?**

7      A.   Correct, yeah, Jayhawk Tower, yes.

8      **Q.   I didn't ask, I should have.  Where do**

9  **you live right now?**

10     A.   Live in Topeka.

11     **Q.   What part of town?**

12     A.   Westboro.

13     **Q.   You can actually drive through it again.**

14     A.   Yeah.

15     **Q.   Your personnel record will reflect this,**

16  **but do you know what your rate of pay was?**

17     A.   It was 23 something an hour.  Again, I'm

18  sorry, I don't recall specifically, but.

19     **Q.   Did you travel during your employment**

20  **with the highway patrol?**

21     A.   I did.

22     **Q.   And to where and then for what?**

23     A.   Traveled to the various highway patrol

24  facilities.  Hays, Chanute, trying to think --

25  there was one in Olathe over here in Kansas City.

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1   The purpose was, was first of all to, to introduce
2   me to -- 'cause I was new in the position,
3   introduce me to the folks at those facilities and
4   also to get new acquainted with the facilities.
5       Q.   Did you have any interaction with Colonel
6   Jones?
7       A.   I did.
8       Q.   How often?
9       A.   Oh, occasionally.  I didn't work with
10  Colonel Jones every day, but I would, I would
11  frequently pass by his office and, and, you know,
12  see him and say hello.  We actually flew in the
13  governor's executive aircraft to Hays, along with
14  my boss.
15      Q.   And when you say your boss you mean
16  Ms. --
17      A.   Sherry Macke, yes, and Richard Oliva was
18  on there as well.
19      Q.   Roughly when was that flight?
20      A.   Umm.  Gosh.  You know, I don't recall the
21  specific date, I'm sorry.  I do remember that it
22  happened, but I don't recall the date.
23      Q.   It's my understanding from speaking to
24  Herman Jones that you have an affinity for
25  aircraft or flying?



5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

## WILLIAM H. DAWES, JR.

1    A.    That's fair to say.

2    Q.    **Describe, is it a hobby or just an**

3    **interest?  Describe it.**

4    A.    A little bit of both.  I am a pilot, I

5    have a pilot's license so I do recall one

6    conversation with Colonel Jones where we talked

7    about he's very interested in flying as well and

8    wanted to -- had dreams of purchasing a Cessna

9    Citation aircraft for the State and I remember

10   joking with him and saying, oh, you know, we're

11   going to have to take that aircraft on a trip

12   somewhere if that ever comes to fruition, so.

13   Q.    **When, if ever, did you come to the**

14   **conclusion that you were a transgender person?**

15   A.    Oh, boy.  Umm.  I've basically known

16   since age five I would say.  I wouldn't have put

17   the label transgender, you know, on myself at that

18   age, but.

19   Q.    **At what, at what point in time did you**

20   **come to identify --**

21   A.    Oh --

22   Q.    **-- yourself as --**

23   A.    Oh, that would have been probably in my,

24   oh, mid to late twenties?

25   Q.    **That puts it in either the late eighties**

# WILLIAM H. DAWES, JR.

1   or the early nineties.

2       A.    That's accurate.

3       Q.    **Whom at the highway patrol did you tell**

4   **that you were transgender?**

5       A.    Umm.  I believe to my knowledge two

6   people were aware.  One of them was my boss,

7   Sherry Macke, who found out by accident, and

8   another one was Sandy Crowell, who was another

9   employee in the office who I chose to tell.

10      Q.    **Can you spell Crowell for me?**

11      A.    C-R-O-W-E, I believe there's two Ls, L-L.

12      Q.    **What was Sandy Crowell's position?**

13      A.    She was an accountant, I think, of some

14  sort.

15      Q.    **Tell me what the order was that Sherry**

16  **Macke and Sandy Crowell learned.**

17      A.    I believe -- I'm not positive, I probably

18  told Ms. Crowell first and then Sherry was

19  probably the second person to find out.

20      Q.    **Describe the circumstances that you**

21  **disclosed the fact that you were transgender to**

22  **Sandy Crowell.**

23      A.    We had a conversation over lunch one day.

24      Q.    **And how did you tell her?**

25      A.    Good grief.  I don't, I don't have a

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1    recollection.

2        Q.    Okay.

3        A.    I truly don't remember.  I just -- we

4    were talking and I just I think at some point

5    opted to confide that in her and just say, well,

6    there's, you know, something about me that, that

7    you should know and, you know, kind of...

8        Q.    And what was your working relationship,

9    if any, to Sandy Crowell?

10       A.    She was a co-worker.  I would say friend,

11   although when I say friend it's not like we hung

12   out on weekends and had dinner together, that kind

13   of thing, but I got -- it was a co-worker I got

14   along with fairly well.

15       Q.    Was there anyone at the highway patrol

16   that you socialized with outside of work?

17       A.    No.

18       Q.    And how did Sandy Crowell receive the

19   information as you recall?

20       A.    For lack of a better term, well.  I mean,

21   she was, she was a bit surprised, but, but curious

22   as a lot of people are.  You know, compassionate.

23   It's no big deal, it didn't seem to affect our

24   working relationship or our, our, you know,

25   friendship.

## WILLIAM H. DAWES, JR.

1     Q.    To your knowledge, did Sandy Crowell tell
2  anybody else that you were transgender?
3     A.    Not to my knowledge.
4     Q.    You said you, that Sherry Macke learned
5  by accident.  What do you mean?
6     A.    Yeah.  I was sending a text message on my
7  iPhone to a friend of mine and inadvertently --
8  Sherry apparently was the last person I had texted
9  with and I inadvertently thought I was responding
10  to my friend when in fact sent a message to Sherry
11  and, so, that's -- it was enough to pique her
12  curiosity and she said something to me -- I
13  believe that happened on a Friday or Saturday
14  evening.  She said something to me Monday morning
15  at work.
16     Q.    What was the text, if you recall?
17     A.    You know, I don't have a specific
18  recollection.  It was, it was a reference to me
19  wearing a skirt or some article of women's
20  clothing and I do remember never being so happy in
21  my life that a picture failed to send, but it was
22  enough that Sherry said, hey, you know, I got this
23  weird text from you, you know, over the weekend,
24  what's -- what's going on.  So...
25     Q.    From your answer I, I deduce that it was

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

Case 2:23-cv-02005-JWB   Document 28-2   Filed 11/20/23   Page 17 of 62

## WILLIAM H. DAWES, JR.

1  you sent a text where literally in the next words

2  made reference to wearing a dress or a skirt and a

3  picture and the picture didn't go?

4       A.    Correct.

5       Q.    And it was by accident to Sherry Macke

6  and she inquired the following first workday?

7       A.    Monday morning, right.

8       Q.    Tell me how that conversation went.  Tell

9  me what you recall of it.

10      A.    Well, every morning when I would go in

11 the office I would always stop by Sherry's office

12 first thing.  Sherry was always the first one, you

13 know, in the office every morning and we often had

14 casual conversation, you know, for a few minutes

15 and then if there's any work-related we might

16 touch on that for a minute, then I would go off

17 to my cubicle.  So, I was in Sherry's office as I

18 had been many times before and during the course

19 of our conversation I remember she reached into

20 her -- I don't think she got it out of her purse;

21 I think her personal phone and her work cell phone

22 were sitting on the desk.  She reached over and

23 grabbed her personal cell phone, which didn't

24 strike me as unusual because she would often get

25 text messages from her kids or her husband or

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# WILLIAM H. DAWES, JR.

1  friends, whatever, and, so, at the time she
2  reached for her phone I thought she was getting a
3  text from her son or whomever, and we continued
4  talking for a moment and then she showed me this
5  text and said, so, you know, I got this text from
6  you this weekend.  She goes, what's, what's going
7  on here?  And, so, she showed me her phone and
8  showed me the text and, you know, instantly the,
9  the warning bells in my mind went off and, so, I
10 ended up -- that is -- there's, there's a time and
11 a place and an environment to come out to someone,
12 anyone, whether it's an employer, a friend,
13 whomever.  That is not the way that any
14 transgender, gay, any person wants to come out to
15 their employer under those circumstances.  That is
16 absolutely not the way you do that.  So, but I
17 tried to be as, as tactful as I could under the
18 circumstances, I guess.  I mean, I, I was
19 uncomfortable.  It was, like I said, that's not
20 the way one wants to handle such things.  At that
21 point I had not told -- the human resources
22 director at the highway patrol I think was aware
23 of the fact that I was transgender, but I had
24 certainly not opted to share it with anybody in my
25 office, other than Ms. Crowell who was holding it

**WILLIAM H. DAWES, JR.**

1  in confidence, to my knowledge.  But, so, anyway I

2  just, I kind of spilled the beans to Sherry and

3  she had told me that thanks for sharing it, but,

4  you know, she said that she would hold that

5  information in strict confidence and I thanked her

6  for that and she assured me that it would not

7  affect our working relationship and that was kind

8  of the end of that.

9      Q.    **When was your conversation with Sherry**

10 **Macke?**

11     A.    Oh, boy.  Umm.  I don't recall the date

12 that happened.

13     Q.    **Well, you were employed from March 2022**

14 **to June or July technically -- or excuse me, March**

15 **of 2021 to July of 2022.**

16     A.    I'd probably been there I'm going to

17 guess and say five or six months at the time that

18 happened.

19     Q.    **Now, you mentioned that the HR director**

20 **knew.  Are you talking about Sherry --**

21     A.    Shelbie Blodgett, yeah, correct.

22     Q.    **Yeah, Shelbie.  How was it that you say**

23 **Shelbie Blodgett knew you were transgender?**

24     A.    I had a private conversation.  I actually

25 went to Shelbie Blodgett as the HR director and I

## WILLIAM H. DAWES, JR.

1  just, I inquired, I was curious about if a person

2  were to transition, to change genders how might

3  that be received in the highway patrol, what, what

4  -- I don't know, what bumps in the road might one

5  expect to encounter and, so, in the course of all

6  that, you know, I told her, I said, well, I'm

7  inquiring for myself and just, you know, this is

8  something that could happen down the road and I'm

9  just, you know, I'm seeking information, trying to

10  get my ducks in a row, that kind of thing.

11       Q.    I mean, was it an inquiry about what

12  would be covered by your health care, health plan?

13       A.    Not so much health plan at that point,

14  although we may have vaguely touched on that.  It

15  was more in terms of like restroom use was a

16  specific question I had because I get it, you

17  know, people are going to be uptight about they,

18  they related to this person as a male, they worked

19  with this person, meaning me, you know, as a male

20  for a year, two years, whatever, and all of a

21  sudden I come to work as a female and now they're

22  having to relate to me, you know, as a female,

23  they're uncomfortable, you know, because I'm going

24  to go to the restroom, whatever; so, I was curious

25  about things like that.  I felt like Sherry -- or

## WILLIAM H. DAWES, JR.

1    Shelbie Blodgett in her position as HR director

2    would be a good point of contact.

3        **Q.    Roughly when was your conversation with**

4    **Shelbie?  You made it earlier sound like, or at**

5    **least as I was listening to you that your**

6    **conversation with Shelbie Blodgett was sometime**

7    **before your conversation with Sherry Macke.**

8        A.    I actually think Sherry Macke, I think my

9    conversation with Sherry was actually, predated

10   the conversation I had with Shelbie.

11       **Q.    Okay.**

12       A.    I'm, I'm pretty confident in saying that.

13       **Q.    To your knowledge, did -- I'm switching**

14   **on you, so, do the mental adjustment.  To your**

15   **knowledge, did Sherry Macke tell anybody else**

16   **about her conversation with you and your being**

17   **transgender?**

18       A.    To my knowledge, no.

19       **Q.    Now, how about to your belief?**

20       A.    To my belief, no.  I have since through

21   my attorney found out that Sherry did in fact tell

22   someone.

23       **Q.    And I'm not going to ask you what your**

24   **attorney told you.**

25               MR. BROWN:  I think you've read the

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604            Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

**WILLIAM H. DAWES, JR.**

1   report, haven't you?

2        A.   Yeah, yeah.  So, apparently before my

3   interview, my investigative interview Sherry

4   approached Captain DiLoreto, the interviewing

5   officer, and she informed him that I was

6   transgender and apparently felt that that might

7   have some bearing on, on something, I don't, I

8   don't know.

9        (THEREUPON, Dawes Deposition Exhibit No 8

10  was marked for identification.)

11       BY MR. COOPER:

12       **Q.   Going to mark as Deposition Exhibit 8 --**

13  **I don't know why it printed this way or if I just**

14  **have a ba+d copy.  Exhibit 8 is a copy of the**

15  **Charge of Discrimination filed with the EEOC.  My**

16  **first question is, is that your signature on the**

17  **bottom left?**

18       A.   Yes.

19       **Q.   Who, if you know, prepared the text in**

20  **the block that's in the, just below the midline**

21  **that says "the particulars are?"**

22       A.   My attorney.

23       MR. COOPER:  I want to do this now so

24  that I don't forget to do it later.

25       (THEREUPON, Dawes Deposition Exhibit No 9

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# WILLIAM H. DAWES, JR.

1    was marked for identification.)

2            MR. COOPER:  I don't know why it's a two-

3    page document and there's nothing on the second

4    page.

5            BY MR. COOPER:

6        Q.   I've given you what's been marked as

7    Exhibit 9, which is a letter dated 16 December,

8    2022, to you through your attorney from the Civil

9    Rights Division, the Department of Justice,

10   correct?

11       A.   Correct.

12           (THEREUPON, Dawes Deposition Exhibit

13   No 10 was marked for identification.)

14           BY MR. COOPER:

15       Q.   Let me give you what's been marked as

16   Deposition Exhibit 10, which is a letter dated 28

17   December, 2022, addressed to Luther Ganieany from

18   the Kansas Human Rights Commission regarding the

19   closure of your complaint.  Agreed?

20       A.   Okay, yes.

21       Q.   You have before you what's been marked

22   previously as Exhibit 3.  It's the binder clip.

23       A.   Okay.

24       Q.   There are numbers in the lower right-hand

25   corner.  I refer to those as Bates numbers.  Would



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1  you turn to page 51.  Bates number 51 in Exhibit
2  3 is an email that you sent to Carly Kaiser on 6
3  June, 2022, is that correct?
4      A.    Correct.
5      Q.    Now, let's preface this.  You were
6  interviewed by Dan DiLoreto in a recorded
7  interview?
8      A.    Correct.
9      Q.    Have you seen the recording of your
10 interview with Dan DiLoreto?
11     A.    I've seen -- I was actually interviewed
12 twice, once on I believe June 13th and then again
13 on the 16th.  I've seen the June 13th interview.
14 I have not seen the June 16th interview.
15     Q.    Is it -- are they available to you?  In
16 other words --
17     A.    They're available.  Yeah, they're
18 available.
19     Q.    Is there a reason you didn't watch the
20 second one but did watch the first one?
21     A.    The first one, it's just something I'd
22 rather not even think about, to be honest with
23 you.  The first one was difficult enough and I
24 didn't, I didn't really want to even, even watch
25 the second one, to be honest, so.



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# WILLIAM H. DAWES, JR.

1   Q.   Well, you've, you've watched the June,

2   the video of the June 13 -- well, you refer to it

3   as an interview.  You didn't answer any questions

4   during that session with Mr. DiLoreto, correct?

5       A.   Correct.

6       Q.   Different question.  Having watched the

7   video do you agree that the video's a true and

8   accurate depiction of your interaction with

9   Captain DiLoreto?

10      A.   I do, I do, and for clarification the

11  reason I referred to it as an interview, that's a

12  KHP term, not a Bill Dawes term.  They made it

13  clear to me that it was an interview, not an

14  interrogation.

15      Q.   Going back to Bates 51 in Exhibit 3, it's

16  my understanding that after sending the email that

17  we see on Bates 51 of Exhibit 3 you then went

18  from your office in the Jayhawk Tower to the

19  General Headquarters building where Ms. Kaiser was

20  working?

21      A.   Correct.

22      Q.   Describe for me in your words what, what

23  it was you did and then we'll talk about why you

24  did it.

25      A.   Okay, and when we say that I went to the

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

**WILLIAM H. DAWES, JR.**

1    Jayhawk, or the building where Ms. Kaiser was, was
2    located, it's not like I sent the email, hit send
3    and then immediately got up and, and, and went
4    there, but probably 20, 30 minutes later I got --
5    I thought about the email and the contents of the
6    email and I thought, you know, I probably should
7    give some context.  I should offer some, some,
8    some context for this email and, so, I -- that was
9    the reason behind literally crossing the street,
10   going to another building and going over to Ms.
11   Kaiser's office.
12        Q.   Okay.  So, you -- 20 to 30 minutes later
13   you went across the street with the intent of
14   giving context to your email.  Again we'll come
15   back to what you intended to do --
16        A.   Okay.
17        Q.   -- but I'm focused, I want to focus first
18   on what you actually did.  So, you crossed the
19   street, you went into the GHQ building.  What was
20   Ms. Kaiser doing?
21        A.   She was in the middle of what appeared to
22   be just casual conversation with a co-worker.
23        Q.   In person or on the phone?
24        A.   In person.
25        Q.   Who was the co-worker?



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# WILLIAM H. DAWES, JR.

1    A.    Oh, wow.  I don't recall her name.  She

2    was the receptionist at the GHQ building.

3    **Q.    Upon finding Carly Kaiser in conversation**

4    **with the receptionist at Ms. Kaiser's desk what**

5    **did you do?**

6    A.    I believe I just walked through the room,

7    'cause it was a large room with a central hallway

8    there, so --

9    **Q.    What floor we talking about?**

10   A.    The first floor, the basement.

11   **Q.    Where did you go?**

12   A.    Went into a rear hallway and probably

13   spent a few moments in the hallway, turned around

14   and walked -- retraced my steps and I think I

15   walked out the same way I came in, through the

16   front door.

17   **Q.    You've read the report of how Ms. Kaiser**

18   **described your behavior during that visit?**

19   A.    Not entirely.  I've been -- I've seen --

20   I know it's part of these documents here, but I

21   haven't read the entire thing, but.

22   **Q.    Okay.  I'm going to paraphrase.**

23   A.    Sure.

24   **Q.    It was her perception that after you sent**

25   **the email you came in the GHQ building, she was in**

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1  conversation with somebody, you went down the
2  hall, hung around a few minutes, looked
3  uncomfortable, and then left the building.  So,
4  would you agree that's an accurate description of
5  your behavior or not?
6      A.   Sure, yeah.  From, from her perspective
7  I'm sure that's an accurate...
8      Q.   Have you ever availed yourself of any
9  opportunity to explain your point of view and
10  behavior with Ms. Kaiser?
11     A.   No.  I have had no contact with her since
12  this email.
13     Q.   And you pointed at ex, at Bates 51 in --
14     A.   Correct.
15     Q.   Okay.  Where did you go after leaving the
16  building?
17     A.   I don't recall specifically, but I'm sure
18  I went back to my office.
19     Q.   All right.  Told you that we'd get to
20  what you intended to do, so, tell me, what was
21  your thought process and what was your intention
22  when after sending the email in Bates 51, crossing
23  the street to go talk to Ms. Kaiser?
24     A.   My intention was to, to give her, provide
25  some context for the, for the email because I



5111 SW 21st Street          6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604             Suite 101                 Suite 305
785-273-3063                 Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com          913-383-1131             316-201-1612

# WILLIAM H. DAWES, JR.

1  realize that that email by itself might have

2  seemed strange, unusual.  I truly did not believe

3  that it would be construed as harassment, that did

4  surprise me, but I did think it was unusual and

5  because of that I thought I'm going to maybe

6  provide some context for this, meaning that I

7  would probably confide in her the true reason that

8  I sent this email and just leave it at that; but

9  when I saw her, Ms. Kaiser, engaged in

10  conversation with someone else that wasn't -- for

11  me that wasn't an option, you know, and I didn't

12  want to just -- it was awkward and I certainly

13  didn't want to just literally stand around for 15

14  or 20 minutes in her office while she was talking

15  to a co-worker, so, I -- so I left.

16       Q.   Again, looking at Bates 51 in Exhibit 3,

17  you sent Ms. Kaiser an email commenting on her

18  appearance and her dress and included a sentence

19  that said, "Please know I'm, that I'm honestly not

20  flirting with you, dot dot dot, although if I were

21  30 years younger, comma, I might seriously

22  consider that option, comma, LOL, period."  You,

23  you said that you went across the street with the

24  intention of telling her why you sent the email.

25  What, what was the reason?

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1    A.   Well, the fact that I'm transgender.   I

2  mean, I notice a lot -- not just with, not just

3  with Kylie (sic) in particular, by the way.   There

4  were all kinds of women that would come and go

5  through my, through the Jayhawk Tower building.   I

6  just happened to know who Ms. Kaiser was only

7  because I knew that she worked across the street

8  on this particular day, sent her the email.   As I

9  said in the email, I was eating my lunch and

10 glanced up, saw her walking down the sidewalk

11 outside and just, I was honestly just jealous of

12 the fact that she was a female and I'm not and

13 she was out there being herself and I was sitting

14 over here not being myself.

15     **Q.   What was the first you learned there**

16 **might be -- that there was going to be an**

17 **investigation or the like related to your email?**

18     A.   That would have happened the following

19 morning.   So, the email was sent on Monday, June

20 6th, so, it would have been Tuesday, June 7th.

21     **Q.   How did you learn that?**

22     A.   My boss, Sherry Macke, called me.   I was

23 actually out of the office.   Again, I was, I was

24 across the street in the GHQ building, not talking

25 to Ms. Kaiser but handling other, other matters.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

# WILLIAM H. DAWES, JR.

1  Received a phone call from Sherry Macke asking me

2  to come back over to the Jayhawk Tower, there was

3  something she needed to speak with me about and,

4  so, I meandered back to the Jayhawk Tower and as

5  soon as I stepped off the elevator was met by

6  Sherry Macke and whisked into a nearby conference

7  room where Shelbie Blodgett, the KHP human

8  resources director, was in there, Major Dan, or

9  Captain Dan DiLoreto was in the office as well

10 from Professional Standards, and I think Shelbie

11 Blodgett, the human resources director.

12      **Q.   Okay, you were taken to a room by Ms.**

13 **Macke and Shelbie Blodgett and Captain DiLoreto**

14 **were there.   What happened?**

15      A.   I was told that there was -- I had been

16 accused of -- it was alleged that I had harassed a

17 co-worker, a female co-worker and an investigative

18 interview was being launched.   I was provided some

19 paperwork to that effect and that's pretty -- and

20 escorted out of the building.

21      **Q.   Okay.   Ask you to look at page 44 in**

22 **Exhibit 3.   I should say Bates 44, it's not page**

23 **44.**

24      A.   Okay.

25      **Q.   Bates 44 is a letter dated 7 June, 2022,**



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604                 Suite 101                  Suite 305
785-273-3063            Overland Park, KS 66212          Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

## WILLIAM H. DAWES, JR.

1   letter -- maybe it's a memo.  Anyway, it says,

2   "Subject, administrative leave with pay," and

3   bears the signature of Colonel Jones.  Was Bates

4   44 one of the documents given to you at that

5   meeting?

6       A.   Yes, sir, correct.

7       Q.   The next page is a letter dated 7 June,

8   2022, signed by Captain DiLoreto that says it's

9   hand delivered to you.  Did you receive a copy of

10  Bates 45 during that meeting?

11      A.   I did.

12      Q.   Bates 45 references ROC 09, KHP policy

13  ROC 09 regarding harassment.  Is that a policy

14  with which you were familiar on June 7, 2022?

15      A.   It was.

16      Q.   And how did you become familiar with ROC

17  09?

18      A.   Had to read it.  There was a regular

19  computer, ongoing computer training that all the

20  employees have to do from time to time and, so,

21  read it online on the KHP website, or I guess it

22  was probably the State of Kansas website, not KHP

23  website, but...

24      Q.   If you turn the page to Exhibit, or in

25  the Exhibit 3 to Bates 46 there's a page bearing

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

## WILLIAM H. DAWES, JR.

1    the title "Employee Conduct Complaint

2    Investigation, Employee's Rights and

3    Responsibilities."  Did you receive a copy of

4    Bates 46 during your meeting with Captain

5    DiLoreto, Sherry Macke and Shelbie Blodgett?

6        A.   Yes, sir.

7        Q.   Were there any other documents that you

8    were given, recall being given during the June 7

9    meeting with Captain DiLoreto?

10       A.   No, I think it was just those three

11   documents.

12       Q.   Next question is did you read the three

13   documents you were given?

14       A.   I did.

15       Q.   When did you read them?

16       A.   I was actually given time before the, the

17   meeting commenced to read these and, so, I read

18   them then and there and I also read them when I

19   got home that afternoon -- that morning, I guess.

20       Q.   What else do you recall being said by

21   anybody present during the meeting on June 7 with

22   Captain DiLoreto?

23       A.   Umm.  I remember the look of shock and

24   amazement on Sherry Macke's face and honestly I

25   don't remember a lot that was said other than



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1   Sherry Macke wanted to try to keep it as

2   confidential, as quiet as we could.  She escorted

3   me back to my desk where I gathered my lunch,

4   handful of personal belongings and went home as if

5   I were going home sick for the rest of the day,

6   and that was, that was the last time I was ever

7   in the fiscal office at KHP.

8        Q.    Turn the page to Bates 47 in Exhibit 3.

9        A.    Okay.

10       Q.    It's a letter dated June 9, 2022, to you

11  from Captain DiLoreto notifying you of your, of an

12  interview scheduled for June 13 at 1 p.m. at the

13  Professional Standards office, correct?

14       A.    Correct.

15       Q.    Did you receive a copy of the letter?

16       A.    I did.

17       Q.    How did you get the copy of the letter,

18  Bates --

19       A.    This letter, as indicated in the upper

20  right-hand corner, this letter was mailed to my

21  home address.

22       Q.    And did you receive it in time to appear

23  for --

24       A.    I did.

25       Q.    We have the video.  I want to know what

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

**WILLIAM H. DAWES, JR.**

1   **happened, went on before the video came on on June**
2   **13.**
3        A.   Gosh.  I, I reported at 1 o'clock -- I
4   showed up early, I remember that.  It was probably
5   more like quarter to 1:00 when I got there.  Was
6   met by Captain DiLoreto, led into the office and
7   we probably chit-chatted for just a moment and
8   said, well, you're here early but I'm here, let's
9   go ahead and, you know, get started and, so, he
10  explained that everything would be recorded both
11  video and audio and, and again, as I touched on a
12  few moments ago, was also told that this was an
13  interview, not an interrogation.  Basically that's
14  -- other than what you've seen in the video,
15  that's, that's pretty much all I can tell you on
16  that.
17       Q.   Okay.  If you look at Exhibit 4 -- we'll
18  **come back to Exhibit 3, but Exhibit 4 is policy**
19  **ADM-07, or Admin 07.  Had you before June 13,**
20  **2022, read Admin 07?**
21       A.   Yes.
22       Q.   **Okay, and how were you made familiar with**
23  **Admin 07?**
24       A.   Again, this was an online, part of an
25  online training or computer training that all

# WILLIAM H. DAWES, JR.

1   staff was required to read.

2      Q.   Okay.  I want you to describe what that

3   training looks like.

4      A.   It's a series of administrative

5   documents.  There were many in addition to this

6   ADM-07, but this is one of many that we were

7   required to, to read and then sign, electronically

8   sign saying that we had read -- that it had been

9   presented to us and we had read it.

10      Q.   Did you before going to GHQ on June 13

11   make any arrangements for representation by KOSE?

12      A.   I was advised to contact a lawyer by a,

13   an acquaintance of mine -- well, actually by a

14   counselor of mine and, so, I, I, I did.  I was

15   advised to request a postponement on the 13th, to

16   not, not, to not -- what am I trying to say?  I

17   was not advised not to cooperate but simply to

18   request a postponement so that I could confer with

19   an attorney.

20      Q.   Did you request a postponement?

21      A.   I did.  That's what I did on the 13th.

22      Q.   On the video or --

23      A.   I believe it's on the video, if I'm not

24   mistaken.

25      Q.   Okay.  Going back to Exhibit 3, I want to

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                     Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                  316-201-1612

## WILLIAM H. DAWES, JR.

1  look at Bates 49.  This title says Kansas Highway

2  Patrol, Garrity slash Lefkowitz 2 warning.  You

3  were presented the Garrity/Lefkowitz warning on

4  June 13 and took an unsigned copy from the

5  meeting, true?

6       A.   Correct, yes, sir.

7       Q.   And you were presented the

8  Garrity/Lefkowitz warning before Captain DiLoreto

9  started asking you any questions and you declined

10 to sign it?

11      A.   Correct.

12      Q.   Do you agree that you told Captain

13 DiLoreto "you'll fire me if I don't talk to you?"

14      A.   Something to that effect I think is

15 accurate, yes.

16      Q.   But you also told Captain DiLoreto that,

17 quote, I can't sign this?

18      A.   Again, that sounds accurate.

19      Q.   At least words to that effect?

20      A.   Okay, yeah.

21      Q.   What, if anything, was said after you

22 left the room on June 13 with Captain DiLoreto?

23      A.   I, I can't speak to anything that was

24 said after 'cause I wasn't there, but --

25      Q.   No, no.  That you know of being said to

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

**WILLIAM H. DAWES, JR.**

1  you --

2        A.   Oh, prior to me walking out the door?

3        Q.   **Yeah.  In other words, off camera but**

4  **still in the building or --**

5        A.   Oh, oh, okay, gotcha.  Honestly, he

6  thanked me for my time, thanked me for coming in

7  and probably wished me good luck and I walked out

8  the door.  That was, that was basically the end of

9  it.

10       Q.   **Between the time you were given the leave**

11 **letters on June 7 and coming in on the 13th did**

12 **you talk to anybody from the highway patrol?**

13       A.   No.  I, I talked to Sherry Macke on the

14 7th.  As soon as I left -- she escorted me out of

15 the, the office and said call me, you know, call

16 me on my -- she said call me -- in fact, she

17 said, "call me on my personal phone 'cause," she

18 said, "you know, I want to have the freedom to

19 talk to you."  I was told, though, that I could

20 have contact with Sherry was about the only person

21 that I was allowed to speak to at the highway

22 patrol.  So, I called her about an hour later.

23       Q.   **What was, what was said during your**

24 **conversation with Sherry Macke?**

25       A.   She inquired as to the email.  She says,

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604          Suite 101                 Suite 305
785-273-3063              Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com       913-383-1131              316-201-1612

**WILLIAM H. DAWES, JR.**

1   "You sent an email to somebody? You know, what's
2   going on, what's -- what happened?" So, I
3   explained to her -- she already knew that I was
4   transgender so I didn't have to worry about that
5   coming as a shock or a surprise, so, I explained
6   to her what happened and said, hey, you know, it
7   is what it is at this point and that's what
8   happened. It was apparently construed as
9   harassment and, you know, here we are kind of
10  thing.
11          Q.    **Anything else you recall being said?**
12          A.    Not specifically.
13          Q.    **How about generally?**
14          A.    I, I, I do remember remarking that in
15  general this was, this was a bit of a, a dicey or
16  a sticky situation because it could be construed
17  as harassment based on my gender identity.
18          Q.    **Why so if you believe that?**
19          A.    Well, the federal law prohibits
20  discrimination on the basis of one's sex, gender
21  identity, you know, et cetera, et cetera; so, from
22  my perspective one needs to tread lightly where
23  this is concerned because whether you agree with
24  my beliefs, my, my lifestyle, whether you agree
25  with me, period, I have a right to express myself

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

## WILLIAM H. DAWES, JR.

1   and that's not -- that's a federal right, that's a

2   constitutional right.  That has nothing to do with

3   the State of Kansas, the KHP, whatever, so...

4       **Q.   What, if anything, did Sherry Macke say**

5   **to you when you suggested that it might be viewed**

6   **as harassment on the basis of being transgender?**

7       A.   She just admonished me to first of all

8   take a deep breath, relax, just cooperate with the

9   investigation, tell the truth, you'll be fine.

10  You know, she said, "I'm sure you'll be back here

11  at work before you know it," and that was pretty

12  much the end of our conversation.

13      **Q.   Who told you to seek an attorney as**

14  **opposed to reaching out to KOSE?**

15      A.   Umm.  I was advised by a counselor I was

16  seeing at the time.

17      **Q.   Who was that?**

18      A.   Caroline Gibbs, who is affiliated with

19  the Transgender Institute of Kansas City.

20      **Q.   And was it -- when you say counselor,**

21  **that's not an attorney?**

22      A.   Correct, correct.  Psychological

23  counselor.  Psychiatrist, psychologist.

24      **Q.   After leaving GHQ building on the 13th of**

25  **June what was your next contact with anybody at**

**Appino & Biggs** Reporting
Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### WILLIAM H. DAWES, JR.

1   the highway patrol?

2       A.   My next contact would have been with

3   Captain Dan DiLoreto via telephone.  Called him --

4   I did touch base with an attorney who advised me

5   to go ahead, cooperate, sign the Garrity/Lefkowitz

6   warning, et cetera, and, so, I called Captain

7   DiLoreto and said, "Hey, if it's still possible

8   I'd like to come in for an interview and we can

9   talk about this."

10      Q.   What, if anything, did he say?

11      A.   He said, "Let me run this up the chain of

12   command, I'll get back to you," and so I received

13   another letter informing me to appear on June 16th

14   I think at 1 p.m. and that email -- that one was

15   sent via email, not USPS.

16      Q.   Okay, and the letter that you're

17   referring to is Bates 48 in Exhibit 3?

18      A.   I believe yes, that's correct.

19      Q.   And to what email address was it sent?

20      A.   That would have been my KHP email

21   address, which probably WDawes@ks.gov or whatever

22   my email was at the time.

23      Q.   And you were -- were you able to receive

24   emails through the --

25      A.   At that point, yes, 'cause I had a --

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1   although I was on administrative leave I had a

2   work computer, state computer at home with me, so.

3        Q.   **Were you doing any state work during**

4   **those period -- that period?**

5        A.   Some.  Minimal.

6        Q.   **And what, what were you doing?**

7        A.   Responding to emails.  I was -- this was

8   the time of year when the State was gearing up and

9   in the fiscal office it's a very busy time of

10  year.  When the new fiscal year starts they have

11  to issue POs for everything, for gas, electric,

12  water, heat.  So, so, we were getting ready to

13  generate brand-new POs so that the bills could get

14  paid in the upcoming fiscal year and so I helped

15  with some of the preparation for, for getting

16  purchase orders submitted and that sort of thing.

17       Q.   **Do you know whether Captain DiLoreto knew**

18  **that you were checking your KS.gov email address?**

19       A.   I believe he did.

20       Q.   **And --**

21       A.   I'm not positive, but I, I feel certain

22  that he probably did.

23       Q.   **Did you acknowledge receipt of the June**

24  **15 letter, Bates 48?**

25       A.   You know, I honestly don't recall if I

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131                316-201-1612

## WILLIAM H. DAWES, JR.

1   acknowledged receipt of it in any way or -- I

2   truly don't remember.

3        Q.   Nonetheless, you showed up the next day?

4        A.   Correct.

5        Q.   And you signed the Garrity/Lefkowitz

6   warning?

7        A.   Yes, sir.

8        Q.   And you gave an interview that was

9   recorded?

10       A.   Correct.

11            MR. BROWN:   Whenever you get a chance,

12   take a break?

13            MR. COOPER:   Now's a good time.

14            (THEREUPON, a recess was taken.)

15       BY MR. COOPER:

16       Q.   You said that you called Captain DiLoreto

17   and asked -- after you'd been told to sign the

18   Garrity/Lefkowitz warning and cooperate with the

19   interview and that you received via email the

20   letter scheduling the interview.  I want to cover,

21   were there any communications, written, oral or

22   otherwise, about your agreement to come back for

23   the interview after the 13th?

24       A.   No.

25       Q.   Other than the phone call and that E-

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1   mail?

2        A.    No.   That was, that was it.

3        Q.    Other than your phone call to Sherry

4   Macke after she escorted you off the property

5   basically on the 7th, did you have any other

6   conversations with Sherry Macke after June 7?

7        A.    I probably had a handful of work-related

8   conversations with Sherry Macke after June 7.   Not

9   a lot, to be honest, but I know that we did chat

10  a few times.

11       Q.    Did you have any conversations with

12  Sherry Macke about the interview or the

13  investigation?

14       A.    No.

15       Q.    And do you have an estimate of what a

16  handful of work-related conversations would

17  comprise?

18       A.    Oh, let's say maybe eight to 12

19  conversations.

20       Q.    And this was this PO issuance process?

21       A.    That and other related items.   I don't

22  recall specifically, but any contact we had was

23  work-related.   It wasn't like I called her and

24  talked about the interview or myself.

25       Q.    Well, you mentioned, you know, if there's

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1  a pothole your phone rings.  Would the same thing

2  -- would you get inquiries, facilities inquiries

3  via email?

4          A.   I did, and that might have been an

5  example of why I would have contacted her because,

6  you know, from home I couldn't really handle a lot

7  of things back in the office.  So, if somebody

8  called me and said, hey, there's something that

9  needs immediate attention, I might have called her

10  and said, Sherry, you know, the people upstairs

11  are getting too hot, call the building guy and ask

12  him if he can work on the AC, or whatever the

13  case might have been.

14          Q.   What was your next contact with anybody

15  at the -- well, withdrawn 'cause I'm skipping.

16  Other than Sherry Macke and Dan DiLoreto, did you

17  have any communications with anybody, that's

18  written or verbal or otherwise, with anybody at

19  the highway patrol from June 7 to June 15?

20          A.   No.  As far as people knew, I disappeared

21  from, from sight and, and, you know, that was the

22  end of it.

23          Q.   What was the next communication with you

24  regarding your employment at KHP after the June 15

25  interview with Captain DiLoreto?



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## WILLIAM H. DAWES, JR.

1     A.   After -- it was actually the June 16th

2    interview, I think, with DiLoreto.

3     **Q.   Correct, that's correct.**

4     A.   Okay.

5     **Q.   So, after your June 16 interview with**

6    **Captain DiLoreto what was the next communication**

7    **you had with anybody at KHP?**

8     A.   Probably a conversation of some sort with

9    my boss, Sherry Macke.  I probably touched -- and

10   again, I'm speculating 'cause I don't recall

11   specifically, but I probably touched base with her

12   to let her know that I'd had my interview and just

13   waiting for, for the investigation to conclude,

14   that kind of thing.

15    **Q.   Exhibit 1 is the July 6 dismissal letter**

16   **from Colonel Jones.  Did you have any**

17   **communications with anybody other than Sherry**

18   **Macke between June 16 and the Exhibit 1?**

19    A.   Umm.  I did.

20    **Q.   What were they?**

21    A.   One, talked to somebody at human

22   resources because I had to inquire about, you

23   know, do I still have insurance, that kind of

24   thing, so.

25    **Q.   And what did you learn during that call?**

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### WILLIAM H. DAWES, JR.

1    A.   Yeah, at that point I was still employed,

2    everything was, you know, if I needed to go to the

3    doctor or whatever, you know, it's fine, go ahead

4    and do your thing, so.

5    Q.   Okay.  Any other communications prior to

6    receipt of the July 6 termination letter?

7    A.   I remember one text message with my boss,

8    with Sherry Macke close to the July 6th.  It was

9    probably within I would say four or five days of

10   that July 6th date where I just, I was frustrated

11   and impatient and I told her, you know, they need

12   to, to bring me back to work or fire me, but, you

13   know, this waiting in limbo is ridiculous,

14   something to that effect.

15   Q.   Did she reply?

16   A.   I don't recall.

17   Q.   And how were you informed of your

18   dismissal?

19   A.   In person and via letter.  I was informed

20   by Major Sauer showed up on my doorstep one

21   morning and said, hey, you know, basically you're

22   being terminated as of today.  Here's a letter

23   that explains it.  Take a moment, read this letter

24   and I have all your personal belongings in my car

25   kind of thing.



5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

## WILLIAM H. DAWES, JR.

1    Q.   Anybody besides Major Sauer that you

2   spoke with?

3    A.   No.

4    Q.   The letter refers you to Shelbie Blodgett

5   with any questions.  Did you have any interaction

6   with Ms. Blodgett after, on or after July 6?

7    A.   I did.  At that point I did speak -- it

8   wasn't with Shelbie Blodgett.  She referred me to

9   one of the, whoever it is that handles their

10  health benefits and stuff.  Told me -- again, I

11  said, what does this mean in terms of, you know,

12  health insurance was my primary concern.  They

13  said, we're mailing you a packet of information

14  that probably answers all your questions and that

15  sort of thing, but basically I was advised to, you

16  know, if you have any prescriptions that need to

17  be refilled -- this was the beginning of July --

18  they said your insurance goes -- it's in effect

19  through July 31st, through the end of the month,

20  so, if you've got prescriptions that need to be

21  refilled, if you've got any doctors' appointments

22  you know are coming up, get to them, you know,

23  that sort of thing before the 31st of July, so.

24   Q.   I'm not going to mark this as an exhibit

25  but I'll give it to you so you can read it.



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### WILLIAM H. DAWES, JR.

1    These are copies of -- yeah, of your interrogatory
2    answers.  Interrogatory 1 just list of names.  I'm
3    going to go through each one of these names and
4    just ask what knowledge or information that you
5    think these people would have that relates to the
6    claims in this case.  Dan DiLoreto was the
7    Professional Standards investigator that you met
8    with on two occasions -- or actually three -- gave
9    you the, your administrative leave papers and the
10   two interviews?
11        A.    Correct, correct.
12        Q.    Any other interaction you had with
13   Captain DiLoreto?
14        A.    Interestingly, yes.  Only about a week
15   prior to this investigation I actually -- he was
16   recently promoted -- he was previously a
17   lieutenant, then promoted to captain.  I actually
18   got him a captain's badge from our supply, Central
19   Supply facility in Salina because I was in Salina.
20   I actually brought him back his captain's badge,
21   took it over to the Professional Standards Unit
22   and gave it to him.
23        Q.    Jason De Vore was the assistant
24   superintendent.  What involvement or knowledge do
25   you believe Lieutenant Colonel De Vore has

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1  regarding the issues?

2      A.   Only, only what he's heard since the

3  lawsuit.

4      Q.   Did you have any interactions --

5      A.   Very, very minimal.  I mean, I knew who

6  he was but I, you know, I probably said hi to him

7  once or twice in my life and that was about it.

8      Q.   Major Sauer was the major over your

9  division, true?

10     A.   Correct.

11     Q.   What knowledge do you believe Major Sauer

12 has regarding your claims?  He delivered the

13 dismissal letter.

14     A.   Well, true, and that's probably -- that's

15 I think up to that point all, all he probably knew

16 of any of this.  Well, I take that back, because

17 I think he was part of their chain of command who

18 was involved.  I think Captain DiLoreto submitted

19 his findings to the colonel and, and the major.

20     Q.   Did you have any knowledge of Sherry

21 Macke informing anybody in the chain of command

22 that you had disclosed to her that you were

23 transgender?

24     A.   I do today as we sit here today.  I did

25 not at the time.

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1      Q.    Do you have any source for that knowledge

2  other than information from your attorney?

3      A.    No.

4            MR. BROWN:  Well, other than it's in the

5  report.

6            THE WITNESS:  Oh, okay.

7            MR. COOPER:  Not in the discussion with

8  chain of command.

9            MR. BROWN:  I'm not sure what the chain

10 of command is, I guess, but he put it in the

11 report.

12     BY MR. COOPER:

13     Q.    In other words, you haven't read Colonel

14 Jones's deposition transcript?

15     A.    No, no.

16     Q.    What knowledge do you think Sherry Macke

17 has regarding your claims of being discriminated

18 against on the basis of being transgender?

19     A.    You know, it's hard to say.  I -- I

20 honestly don't know because we haven't really

21 talked -- I haven't had any communication with her

22 since I think the day after I was terminated.

23     Q.    Okay, what you disclosed to Sherry Macke

24 that you were transgender when you had

25 inadvertently sent her a text message, true?

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

**WILLIAM H. DAWES, JR.**

1      A.   True.

2      Q.   And before you met for the interviews

3   with Captain DiLoreto you had told Sherry Macke

4   that you thought you were being targeted because

5   you were transgender, is that true?

6      A.   Okay.  I --

7      Q.   You told me that earlier today.

8      A.   Right, right.  Well, you know, I, I

9   simply stated that, you know, a case might be made

10  that I was being discriminated against.

11     Q.   Okay.

12     A.   I didn't necessarily feel targeted at

13  that moment.

14     Q.   That's fair.  Any other conversations

15  that you had with Sherry Macke where the subject

16  of being transgender or whether it's you being

17  transgender or transgender in general was brought

18  up?

19     A.   Not, not to my knowledge.  I mean, Sherry

20  was aware of one other transgendered individual

21  who works for the State of Kansas and I remember

22  her telling me at least one or two occasions,

23  well, you know, this person is transgender, they

24  work for the State, no problem, so, I'm, you know,

25  not going to hold it against you kind of thing.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**WILLIAM H. DAWES, JR.**

1   Q.   Shelbie Blodgett worked in HR.  What

2   information do you believe she has that might be

3   relevant to your claims?

4   A.   She's aware of the fact that, obviously

5   that I'm transgender, the fact that I at the time

6   was considering a transition and wanting to

7   explore, as I said earlier, possibilities and, so,

8   she knows about that.

9   Q.   Herman Jones was the colonel at the time.

10  A.   Uh-huh.

11  Q.   Did you have any discussions with Herman

12  Jones about being transgender?

13  A.   Not a peep.  Not a word.

14  Q.   Do you -- to your understanding, who was

15  the decisionmaker that, making the decision that

16  you would be dismissed?

17  A.   I think it was the colonel.

18  Q.   Okay.  The next person listed on your

19  answers to interrogatory 1 is Kraig Knowlton.  Is

20  that the person with whom you spoke with about

21  getting your COBRA packet?

22  A.   No.  Matter of fact, I'm not sure who

23  Kraig is.

24  Q.   Okay.  Kraig Knowlton's the Director of

25  Personnel Services at Department of

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### WILLIAM H. DAWES, JR.

1    Administration.

2         A.    Okay.  I never had any direct contact.

3         Q.    **Okay, and Carly Kaiser --**

4         A.    Obviously.

5         Q.    **The Email?**

6         A.    The email with Carly, yes.

7         Q.    **Any other information that you think**

8    **Carly would have with respect to interactions by**

9    **you?**

10        A.    No.  I, I don't think she had any idea

11   that I was transgender.

12        Q.    **Did you get unemployment?**

13        A.    Ultimately, yes.

14        Q.    **And how long did you receive unemployment**

15   **benefits?**

16        A.    Well, I got, I got my unemployment in one

17   lump sum.  Initially my unemployment was denied

18   by, by the State because what they based -- they

19   read the, the Exhibit 1 -- they read that letter

20   in which it said you failed to cooperate with an

21   investigation so we're terminating you, so, they

22   used that as their deciding factor and said

23   because you refused to cooperate with your

24   employer you're not eligible for unemployment.  I

25   appealed and I won the appeal and was awarded


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1  unemployment.

2      Q.   You said you got it in a lump sum.

3  Before or after you started for the post office?

4      A.   After.

5      Q.   Is the statement that you've not sought

6  any counseling or treatment for emotional distress

7  regarding your dismissal -- your interrogatories

8  were signed in June, so, is that answer still

9  true?

10     A.   Yes and no.

11     Q.   Explain that, please.

12     A.   You know, I continue to receive

13  counseling for, for transgender and the various

14  issues and among other things my, my termination

15  from KHP was the subject of many a conversation

16  between my, my counselor, my psychological

17  therapist and myself.  But I did not seek therapy

18  specifically because I was, you know, terminated.

19     Q.   Do you have any knowledge of any person

20  employed by the highway patrol who was presented a

21  Garrity/Lefkowitz warning who refused to sign and

22  be interviewed?

23     A.   No.  I'm aware of other people who, who

24  were the subject of investigations and ultimately

25  were terminated, but -- and, of course, I don't

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### WILLIAM H. DAWES, JR.

1   know the circumstance 'cause it's confidential;

2   but I'll say no, to my knowledge, nobody.  I'm

3   aware that I'm not the first person that was the

4   subject of an investigation, but I -- you know, I

5   don't know whether they signed paperwork or not.

6        **Q.   Who are the people that you are aware of**

7   **that were the subject of an investigation who were**

8   **terminated?**

9        A.   There was -- and again I cannot recall

10  the name, but there was a, it was a female who

11  was employed at human resources, worked with

12  Sherry (sic) Blodgett.  Found herself the subject

13  of an investigation and 30 days later just poof,

14  disappeared.

15       **Q.   What period of time are you talking**

16  **about?**

17       A.   Oh, that would have been several months,

18  probably six months or so before my investigation

19  happened.

20       **Q.   Do you know if it was before or after**

21  **Christmas 2021?**

22       A.   Oh, it was after.

23       **Q.   Anyone, anyone else that you know that**

24  **was subject to an investigation and terminated?**

25       A.   Not to my knowledge.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

1      Q.    Told you when we started that if there
2  was any point in time that you had a problem with
3  anything I did you'd bring it to my attention.
4  You haven't brought any problems to my attention.
5  Have we gotten along?
6      A.    Okay.
7      Q.    Have we?
8      A.    No, no, no.
9      Q.    We've not gotten along?
10     A.    We have gotten along.  I haven't had any
11  problems.
12          MR. COOPER:  All right, there we go.
13  Those are my questions today.
14          MR. BROWN:  I don't have any, thank you.
15          (THEREUPON, the deposition concluded at
16  10:54 a.m.)
17  .
18  .
19  .
20  .
21  .
22  .
23  .
24  .
25  .


5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1                           SIGNATURE

2     .

3            The deposition of WILLIAM H. DAWES, JR.

4     was taken in the matter, on the date, and at the

5     time and place set out on the title page hereof.

6     .

7            It was requested that the deposition be

8     taken by the reporter and that same be reduced to

9     typewritten form.

10    .

11           It was agreed by and between counsel and

12    the parties that the deponent will read and sign

13    the transcript of said deposition.

14    .

15    .

16    .

17    .

18    .

19    .

20    .

21    .

22    .

23    .

24    .

25    .

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# WILLIAM H. DAWES, JR.

1                           AFFIDAVIT

2     .

3     STATE OF _____:

4     COUNTY/CITY OF _____:

5     .

6           Before me, this day, personally appeared,

7     WILLIAM H. DAWES, JR., who, being duly sworn,

8     states that the foregoing transcript of his/her

9     Deposition, taken in the matter, on the date, and

10    at the time and place set out on the title page

11    hereof, constitutes a true and accurate transcript

12    of said deposition, along with the attached Errata

13    Sheet, if changes or corrections were made.

14    .

15           _____

16                 WILLIAM H. DAWES, JR.

17    .

18    SUBSCRIBED and SWORN to before me this

19    _____ day of _____, 2023 in the

20    jurisdiction aforesaid.

21    .

22    _____        _____

23    My Commission Expires        Notary Public

24    .

25    .



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## WILLIAM H. DAWES, JR.

1                              DEPOSITION ERRATA SHEET

2        .

3     RE:          APPINO & BIGGS REPORTING SERVICE, INC.

4        .

5     FILE NO.: 70633

6        .

7     CASE:        WILLIAM H. DAWES, JR. vs.

8                  STATE OF KANSAS

9        .

10    DEPONENT: WILLIAM H. DAWES, JR.

11       .

12    DEPOSITION DATE: 09/11/2023

13       .

14    To the Reporter:

15    I have read the entire transcript of my Deposition

16    taken in the captioned matter or the same has been

17    read to me.  I request that the following changes

18    be entered upon the record for the reasons

19    indicated.  I have signed my name to the Errata

20    Sheet and the appropriate Certificate and

21    authorize you to attache both to the original

22    transcript.

23       .

24       .

25       .



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## WILLIAM H. DAWES, JR.

```
1   PAGE:LINE FROM          TO              REASON

2       .

3       .

4       .

5       .

6       .

7       .

8       .

9       .

10      .

11      .

12      .

13      .

14      .

15      .

16      .

17      .

18      .

19      .

20      .

21      .

22      .

23      .

24  SIGNATURE:_____  DATE:_____

25          WILLIAM H.  DAWES,  JR.
```



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# CERTIFICATE OF
# REPORTER

## STATE OF MISSOURI

I, Barbara J. Hoskinson, a Certified Court Reporter, Commissioned as such by the Supreme Court of the State of Missouri, and authorized to take depositions, certify that the foregoing was reported by stenographic means, which matter was held on the date, and the time and place set out on the title page hereof and that the foregoing constitutes a true and accurate transcript of the same.

I further certify that I am not related to any of the parties, nor am I an employee of or related to any of the attorneys representing the parties, and I have no financial interest in the outcome of this matter.

Given under my hand and seal this 21st day of September, 2023.

Barbara J. Hoskinson
C.C.R. No. 999


5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612