IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM H. DAWES, JR.,

                Plaintiff,

vs.                                                      Case No. 2:23-cv-02005-EFM-TJJ

STATE OF KANSAS,

                Defendant.

**Reply in Support of Defendant's Motion for Summary Judgment**

Defendant submits this reply in support of its motion for summary judgment, Doc. 28.

**Statement of Facts**

To aid the Court in tracking the response to defendant's statements of fact (DSOF, Doc. 28) and plaintiffs' additional statement of facts (PSOF, Doc. 30), this reply sets forth the only those facts which plaintiff purports to controvert. The original facts in block quote text, plaintiffs' response in *block quote italics*, and defendant's reply (if any) in **bold text.**

> 5.      [F]ollowing Dawes' disclosure [to his supervisor, Sherry Macke], …a meeting was arranged … . The attendees discussed Dawes' planned transition and KHP's responsibilities in accommodating Dawes through the process in an effort to ensure KHP's preparedness. Exhibit 5, *Jones dep.*, 17:16-18:25; 19:4-23. The participants elected to seek advice and additional information relating to training from the Kansas Department of Administration. *Id*.

> *Response: … This is a post-hoc fabrication. There is no documentation of this meeting, no documentation regarding the request to another department, nor any documentation as to what was discussed in this meeting. (Plaintiff's Statement of Facts # 9, 10). There are no listings on Defendant's privilege log noting any documents withheld in this time period with the meeting participants listed. (Plaintiff's Statement of Facts #9, 10; Ex. D, Privilege Log.)*

**Reply: Plaintiff does not cite any materials in the record or show that Defendant's evidence to support this fact is inadmissible. FRCP 56(c)(1). The admissible evidence in the record supports the fact, and this court does not make a credibility determination at the summary judgment stage.** *See Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986). Plaintiff testified Sherry Macke did share his disclosure with others. Doc. 28-2,** *Dawes dep.***, 21:20-22, even though he believed their conversation to be confidential. The privilege log provides support for Col. Jones' admissible testimony. Doc. 30-5,** *Privilege Log***. Plaintiff does not show a genuine dispute to preclude an award of summary judgment. FRCP 56(a).**

> 47. Effective July 7, 2022, the KHP terminated Dawes's employment for the refusal to answer questions during the interview with the PSU on June 13, 2022. Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xxiv.
>
> *Response: Defendant has incorrectly paraphrased the stipulated fact in the Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xxiv. The full stipulated fact states: Case 2:23-cv-02005-EFM Document 30 Filed 12/08/23 Page 14 of 37 Effective July 7, 2022, KHP terminated Dawes' employment with the KHP. The stated reason was: "The reason for the dismissal is your refusal to answer questions during an interview with the Professional Standards Unit on June 13, 2022.""  Pretrial Order, Doc. 25, § 2.a, Stipulation ¶ xxiv.*

**Reply: Plaintiff does not cite any materials in the record or show that Defendant's evidence to support this fact is inadmissible. FRCP 56(c)(1). Plaintiff admits he refused to participate in a compelled interview, (DSOF 35) and knew at the time he would be terminated for the refusal, (DSOF 31), yet he refused. (DSOF 33). The KHP's reasons for termination were because of plaintiff's refusal. Plaintiff does not show a genuine dispute to preclude an award of summary judgment. FRCP 56(a).**

**Plaintiff's Additional Facts:**

> 5. Plaintiff was the only transgender employee in the Highway Patrol as far as Colonel Jones is aware. (Def. Ex. 5, Jones Depo. 20:03-06).
>
> Response: uncontroverted but misstates the testimony and is not material. Col. Jones did

{T0480372}                                              2

not know of any other transgender or transitioning persons employed by the KHP "at that time," meaning at the time Jones became aware of plaintiff's status and met with HR, Legal, and other staff to discuss preparations for accommodation of plaintiff. *See* DSOF 5. Regardless, Col. Jones's knowledge of his employees' self-identified gender is not a material fact requiring agreement to award summary judgment. FRCP 56(a).

> 7. Plaintiff believed this disclosure was made in confidence. (Def. Ex. 2, Dawes Dep. 16:1-3, 21:14-22).

Response: Controverted in part, but not material. Plaintiff' testimony was he did not believe co-worker Sandy Crowell told anyone else. Doc. 28-2, *Dawes dep.*, 16:1-3. Plaintiff also testified that he learned later that Macke did tell others about his disclosure. *Id*. at 21:20-22. There is no genuine dispute as to a material fact that precludes an award of summary judgment. FRCP 56(a).

> 10. Defendant has produced no documentation regarding this meeting, nor the request to another department, about Plaintiff's transgender status with Superintendent Colonel Jones, Asst. Superintendent DeVore, Human Resources Director Blodgett, KHP General Counsel Gaineany, and Major Sauer. There are no listings on Defendant's privilege log noting any documents withheld in this time period with the meeting participants listed. (Ex. D, Privilege Log).

Response: uncontroverted that Defendant produced no documentation to plaintiff regarding the meeting referenced in Col. Jones' deposition testimony. Controverted that Defendant produced no documentation regarding the request to another department, and that the privilege log did not list documents withheld between one or more meeting participants. See Doc. 30-5, Privilege Log. Plaintiff does not show Defendant's evidence to support this fact is inadmissible. FRCP 56(c)(1). The admissible evidence in the record supports the fact, and this court does not make a credibility determination at the summary judgment stage. *See Anderson*, 477 U.S. at 255. Plaintiff does not show a genuine dispute to preclude an award of summary judgment. FRCP 56(a).

> 16. The Garrity/Lefkowitz II Warning provided to Plaintiff for the first time at the

start of the June 13, 2022, interview states:

> I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties or fitness for duty, you will be subject to disciplinary action which could result in your dismissal for the Kansas Highway Patrol. (Def. Ex. 14).

Response: uncontroverted as to the language included in the Garrity/Lefkowitz II Warning. Controverted that Plaintiff provides admissible evidence to support the assertion that June 13, 2022 was the first time he'd been provided or became aware of the Garrity warning. FRCP 56(c)(1)(A). Regardless, he admits KHP provided a full explanation of the warning's content, time to review the warning, and he demonstrated an understanding of the consequences for noncompliance, prior to being requested to sign it. DSOF 29, 30.

> 20. The interview on June 13, 2022, lasted a total of 5 minutes and 24 seconds. (Def. Ex. 17, Video). This was the first time Plaintiff had seen the Garrity form. (Def. Ex. 2, Dawes Depo. 36:25-37:11; Def. Ex. 16).

Response: uncontroverted that the June 13, 2022 interview was brief due to Plaintiff' refusal to cooperate. Controverted that Plaintiff provides admissible evidence support the assertion that June 13, 2022 was the first time he'd been provided or became aware of the Garrity warning. FRCP 56(c)(1)(A). Regardless, he admits KHP provided a full explanation of the warning's content, time to review the warning, and he demonstrated an understanding of the consequences for noncompliance, prior to being requested to sign it. DSOF 29, 30. Plaintiff does not cite admissible evidence to show a genuine dispute that precludes an award of summary judgment. FRCP 56(a).

> 21. During the interview on June 13, 2022, Plaintiff requested to speak with an attorney or asked about having an attorney multiple times […] Def. Ex. 16, interview transcript

Response: Controverted. Misstates the record. Dawed refuses to sign the Garrity warning, stated he was not comfortable signing the Garrity warning, and then stated he's asking to speak with his attorney. Doc. 28-16, Transcript of June 13 Interview. Plaintiff then asks *if he's allowed to* have

an attorney with him, and Cpt. DiLoreto replies the representation referenced is an association representative. *Id*. Plaintiff did not request an attorney be provided to him, did not contact the KHP upon receipt of the June 9 letter to inquire about bringing an attorney, and did not request a postponement of the interview to allow him time to consult with an attorney. Plaintiff does not cite admissible evidence to show a genuine dispute that precludes an award of summary judgment. FRCP 56(a).

> 22. Before June 13, 2022, Plaintiff spoke with an attorney and "was not advised not to cooperate" and was advised to request a postponement of the interview on June 13, 2022. (Def. Ex. 2, Dawes Depo. 36:10-24). It was Plaintiff's intention to request a postponement of the interview on June 13, 2022 so he could further consult with an attorney. (Def. Ex. 2, Dawes Depo. 36:10-24).

Response: Controverted. Misstates the testimony. Plaintiff testified "I was not advised not to cooperate but simply to request a postponement so that I could confer with an attorney." Doc. 28-2, *Dawes dep.*, 36:16-19. Plaintiff did not request a postponement of the interview. Doc. 28-16, *Transcript of June 13 Interview*, Doc. 28, Exhibit 17, *June 13 Interview*, at 0:01:38 – 0:02:16. *See also* DSOF 36. The admissible evidence shows that Plaintiff did not request a postponement. Plaintiff does not cite admissible evidence to show a genuine dispute that precludes an award of summary judgment. FRCP 56(a).

> 24. State policy grants an employee the right to speak to an attorney. (Def. Ex. 5, Jones Depo. 30:21-31:03).

Response: Controverted and objection; misstates the testimony. Col. Jones testified that, under a criminal proceeding, a person has the right to counsel, and that KHP's policies don't prohibit an employee from speaking to an attorney. Doc. 28-5, Jones dep., 30:21-31:7. Col. Jones did not testify that the right to speak to an attorney is granted to employees under state policy. Plaintiff does not cite admissible evidence to show a genuine dispute that precludes an award of summary judgment. FRCP 56(a).

27. Defendant has produced no documentation in regard to this meeting with executive command. There are no listings on Defendant's privilege log noting any documents withheld in this time period. (Ex. D).

Response: controverted. See DSOF 5 and response, see also Defendant's response to PSOF 10 above.

29. Plaintiff talked with an attorney after the June 13, 2022 interview and was advised to go ahead with the interview, cooperate, and sign the Garrity warning. (Def. Ex. 2, Dawes Depo. 40:25-41:09).

Response: Uncontroverted and immaterial.

32. The KHP does not have an obligation to complete the investigation – an investigation is discretionary. Policy AAA-02 – Sexual Harassment Policy Statement notes: "The EEO coordinator *may*, acting through the superintendent, cause a prompt and thorough investigation to be conducted and make recommendations to the regional commander regarding resolution of the situation." (emphasis added). (Def. Ex. 8 – AAA-02 – Sexual Harassment Policy Statement).

Response: Controverted. The initial decision to conduct an investigation is discretionary, but KHP is under obligation to ensure all employees work in an environment free from sexual harassment. Doc. 28-8, AAA-02 – Sexual Harassment Policy Statement. Once it is determined an investigation is warranted, it is expected to be completed. See Doc. 28-7, KHP Policy ROC-09 (dictating the agency *shall* take direct and immediate action to prevent/remedy harassment). AAA-02 also designates the Human Resources Director as the EEO coordinator, not Col. Jones.

34. There was no prejudice to the investigation because of the three-day delay in the interview. (Def. Ex. 5, Jones Depo. 39:05-08; Def. Ex. 6, DiLoreto Depo. 41:07-41:15).

Response: Uncontroverted and immaterial.

35. The investigation was concluded after Plaintiff's interview on June 16, 2022 – the only thing to be done was to draft the report. (Def. Ex. 6, DiLoreto Depo. 43:17-25).

Response: Uncontroverted as to the PSU's requirements being completed; controverted that the drafting and submission of a report is the last step of the investigatory process. Doc. 28-5, *Jones dep.*, 10:22-11:10.

> 36. Colonel Jones was aware that after Plaintiff was notified he was on administrative leave, Plaintiff called his supervisor, Ms. Macke, and Ms. Macke in turn, called to tell the PSU investigator that Plaintiff had decided to transition from male to female and that he said that he thought he was being targeted with the investigation because he had recently made that decision. (Def. Ex. 5, Jones Depo. 25:17-26:17).

Response: Controverted. Misstates testimony. Col. Jones testified he learned of Dawes' contention sometime after Dawes' termination:

> Q. How did that happen?  Did somebody tell you that?
> A.  I think it was -- I don't recall that, but I think it was verbal of someone just saying that he thought -- I think it was at the point in time after termination.
> Q. Okay.  So after the report had come out and after termination?
> A. Yes.
> Q. Who was it that said that, do you recall?
> A. I don't recall.

Jones dep., 26:18-27:3

> 38. Colonel Jones received the investigation report, reviewed the report, and then made the decision to terminate Plaintiff. (Def. Ex. 5, Jones Depo. 42:01-19).

Response: Uncontroverted as to those events occurring; controverted to the point that Col. Jones had not considered termination prior to receipt of the PSU report. Doc. 28-5, *Jones dep.*, 32:7-33:11.

## Argument and Authorities

Plaintiff correctly notes summary judgment determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52 (cleaned up). The uncontroverted material facts here leave no room for a reasonable jury to rule in Plaintiff's favor.

I.  **Plaintiff fails his prima facie burden.**

   A.  **The Tenth Circuit requires an initial showing of a circumstance that infers discrimination.**

Although appellate courts typically spot a mulligan to plaintiffs a mulligan by assuming the initial prima facie burden is met, Tenth Circuit cases have evolved in what is required. Older cases, cited in plaintiff's response, focused on the position's existence following the termination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) citing *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999) holding a plaintiff must "show that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." The Court then shifted toward a comparison model. See *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006), citing *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004) holding "To establish a prima facie case, a plaintiff ordinarily must show that [1-3 same], and (4) the plaintiff was treated less favorably than others (*e.g.*, the position at issue remained open after the adverse employment action)."

The Tenth Circuit requires plaintiff to demonstrate an inference of discrimination before proceeding to the second step in the burden-shifting analysis. *See e.g.*, *Thomas v. Farmers Ins. Exch.*, 856 Fed Appx 176, 186 (10th Cir.), *cert. denied*, 142 S. Ct. 488 (2021) (citing(holding "a discrimination claim [at the prima facie stage] entails showing, by a preponderance of the evidence, that [1] He is a member of a protected class, [2] who suffers an adverse employment action, [3] and the challenged action occurred under circumstances giving rise to an inference of discrimination.")); *see also Dalvit v. United Airlines, Inc.*, 359 Fed Appx 904, 912 (10th Cir. 2009) (same). While plaintiff does not clear the hurdle under *Kendrick*, it is clear Plaintiff does not clear the hurdle under current cases.

B.	**There is no inference of discrimination to be drawn.**

At the summary judgment stage, the court must determine if the nonmoving party has "adduced sufficient evidence to allow the jury to draw an inference." *Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007). An inference is unreasonable and speculative when it requires a jury's findings to be based on "a guess or mere possibility." *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (internal citations omitted).

Here, a jury would have to make three speculative leaps (and ignore undisputed evidence) to infer discrimination. First, it would require an assumption that Col. Jones had a bias against transgender persons. There is no evidence in the record to support such an inference. Next, a jury would have to disregard the evidence in the record and assume Col. Jones had no prior knowledge of plaintiff's status before reading the PSU report. Col. Jones knew months before the investigation or report existed. Finally, the jury would have to hypothesize that Col. Jones retains non-trans employees who refuse to cooperate with PSU investigations. The record reflects no other employee assumed they could refuse participation and still keep their job. DSOF 39. Dawes understood, saying "You'll fire me if I don't talk to you, basically." DSOF 31, 33.

No "proper inference" can be drawn. See *Thomas*, 856 Fed Appx. at 188–89.

C.	**There is no evidence to support disparate treatment.**

Plaintiff contends he is not required to show he was treated less favorably than others not in the protected class. Doc. 30 at 26. Plaintiff's sole claim is discrimination under Title VII. Discrimination, by definition, requires a showing show less favorable treatment. *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1740 (2020) (defining "discriminate" as 'To make a difference in treatment or favor (of one as compared with others).' … [A]n employer who intentionally treats a person worse because of sex—such as by firing the person for actions or

attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII.") (internal citations omitted). There is no evidence of discrimination.

**II.     There is no evidence of pretext.**

Without regard to Dawes' inability to sustain the initial burden, Defendant shows a legitimate, nondiscriminatory reason for Dawes' termination—his refusal to answer questions during the interview with PSU. *See McDonnell*, 411 U.S. 792.

Plaintiff must supply evidence that this reason is "merely a pretext for discriminatory intent." *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011). Plaintiff has a variety of ways to do this: "(1) by showing that the proffered reason is factually false or (2) by showing that discrimination was a primary factor in the employer's decision, which is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013) (cleaned up). He may also produce "evidence that the defendant acted contrary to a written company policy ... or evidence that the defendant acted contrary to an unwritten policy or contrary to company practice." *Mann v. XPO Logistics Freight, Inc.*, 819 Fed Appx. 585, 595 (10th Cir. 2020), citing *Kendrick*, 220 F.3d at 1230. (cleaned up).

The record supports no such theory. First, Dawes admits he refused to participate in the interview as instructed—*i.e.*, the proffered reason is not false. Second, there is no indication Dawes' termination was related to his gender identity. *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1200 (10th Cir. 2021) (affirming summary judgment in favor of defendant because, despite defendant knowing of plaintiff's religion, plaintiff presented "no evidence of any statements or actions suggesting a negative perception of Muslim employees").

There is no comparator to Dawes. No other employee that refused to cooperate in an

investigation kept their job. Instead, all others avoided the interview by preemptively resigning. Dawes' dismissal is consistent with, not contrary to, KHP policy.

### A. Plaintiff's arguments do not create a triable issue.

The attempts argued in plaintiff's response fall short of creating a triable issue of pretext:

1. The argument the reason provided is "not the whole story" is conjecture and has no support in the record. Dawes' motivation for non-compliance does not excuse it.

2. Later allowing Dawes to come in and be interviewed does not excuse Dawes' initial refusal. Policy supports KHP's responsibility to make every effort to complete the investigation of the complaint. Allowing Dawes a second interview provided PSU that opportunity. Dawes' initial refusal to cooperate as instructed, despite multiple warnings was not excused by his later change of heart.

3. The record indicates Col. Jones contemplated plaintiff's termination on June 13, 2022, and discussed the situation with other leadership staff. KHP's decision not to terminate plaintiff on the spot is not indicative of pretext. Plaintiff's interpretation to the contrary is purely speculative and lacks evidentiary support.

4. Plaintiff's subjective beliefs or desires to involve a private attorney are immaterial to the determination of pretext. The record reflects plaintiff made no attempt to call ahead of the interview to reschedule, ask questions, or seek clarification. The record documents the multiple written and verbal warnings KHP provided, both prior to and at the interview, laying out the consequences of refusal to participate.

When analyzing the pretext question, the court doesn't "ask whether the employer's reasons were wise, fair or correct[.]" *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007). The court instead asks "whether the employer honestly believed its reasons and acted in good faith upon them." *Id*. at 1119. The court considers "the facts as they appeared to the person

making the decision," and the court does not "second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment." *Id*. "'The reason for this rule is plain: [the court's] role is to prevent intentional discriminatory ... practices, not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments.' " *Id*. (quoting *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

5. The lack of retained documentation regarding executive-level meetings related to personnel issues is not indicative of pretext. There is no suggestion of "procedural irregularities or action contrary to policy." First, plaintiff points to no KHP policy that requires minutes or recordings of executive level meetings. Second, plaintiff misunderstands or miscontrures materials produced to him. *See* Defendant's response to PSOF # 10 and Doc. 30-5, *Privilege Log*. Plaintiff admits to having met with Human Resources Director Shelbie Blodgett, so it is not disputed that the meeting occurred. The meeting to discuss KHP's preparations to support plaintiff's transition is supported by the follow up requests made to the Kansas Department of Administration. Doc. 30-5, *Privilege Log*. And Col. Jones' discussion regarding plaintiff's refusal to interview were discussions that involved legal counsel. *See* Doc. 28-5, *Jones dep.*, 32:11 – 33:3. There is no evidence to support an inference of pretext.

6. The fact that plaintiff was, at the time, the only transgender KHP staff member Col. Jones was aware of does not, standing alone, indicate pretext. Plaintiff admits it is only his speculation that he was being "targeted" because he was investigated after being reported by a female co-worker after he made [documented] improper remarks to her. No evidence in the record supports this hypothetical inference of pretext.

7. KHP policies do not conflict. The fact that policies outlining required behavior do not, individually, list out consequences for non-compliance does not indicate an irregularity.

Discipline policies outline disciplinary procedure for non-compliance of *all* policies. It is nonsensical to expect each policy to be qualified by a statement of consequence for failure to obey. Dawes' understood his job was at risk for refusing to cooperate. This does not support a showing of pretext.

    8.    Defendant does not dispute plaintiff was a good employee prior to his refusal to comply with mandatory procedures. Likewise, Dawes does not dispute his policy violation.

None of these "examples of pretext" provide a reason to submit this case to a jury. *See Anderson*, 477 U.S. at 251-52. Plaintiff cannot rest on allegations and must instead "set forth specific facts" that would be admissible evidence in the event of trial from which a rational trier of fact could find for him. *See* Fed.R.Civ.P. 56(e). There is no such evidence on this record.

    **B.**    **There is no evidence of an attempt to cover-up KHP's actions.**

Plaintiff's responsive caselaw is correct, it is just not applicable. Here there is no "[p]roof that the defendant's explanation is unworthy of credence" or KHP "dissemble[ed] to cover up a discriminatory purpose." *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 134 (2000). The record shows KHP's legitimate, non-discriminatory reason for firing plaintiff has never changed and is a direct result of plaintiff's own (admitted) actions.

To survive, plaintiff must point to some evidence of pretext. "The real question, it must be remembered, is whether a plaintiff has shown actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act [Title VII]." *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). There are no actions here that remain unexplained.

The material facts are uncontroverted. Plaintiff was aware of KHP's policies and procedures. Doc. 30, *Pltf's Response*, DSOF 16 uncontroverted, p. 6. Plaintiff admits that he

agreed to abide by KHP's policies and procedures. *Id*. Plaintiff understood he would be fired for refusing to cooperate at the interview on June 13, 2022. *Id*., DOSF 31 uncontroverted, p. 10. Yet he refused to sign the warning (*id*., DSOF 33 uncontroverted, p. 10) and refused to participate in a compelled interview. *Id*., DOSF 35 uncontroverted, p. 11. KHP terminated Plaintiff's employment because of his breach of policy: refusal to cooperate with the internal investigation. DSOF 47. Nothing suggests this reason is "unworthy of credence." *Tabor*, 703 F.3d at 1218. The remaining details of this case are immaterial and do not preclude an award of summary judgment.

The discrepancies plaintiff lodges are extraneous to the record and do not controvert material facts. Dawes' "innocent" intention when emailing a female co-worker doesn'tchange the fact that Dawes violated KHP policy. Plaintiff's (alleged) misunderstanding of "representation" does not change the fact that he violated KHP policy. The exact date Col. Jones became aware of Plaintiff's transgender status does not change the fact that Dawes violated KHP policy. The details of a meeting between Col. Jones and other KHP staff to discuss Dawes' plan to transition does nothing to change the fact Dawes violated KHP policy. And Dawes ' being transgender does nothing to change the fact that he knowingly and willingly violated KHP policy.

**Conclusion**

Defendants are entitled to judgment as a matter of law.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 SW 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cmoe@fpsslaw.com

<u>s/David R. Cooper</u>
David R. Cooper                                    #16690
Crystal B. Moe                                      #29168
**Attorneys for Defendant**

## Certificate of Service

    I hereby certify that I caused the foregoing to be electronically filed on the December 22, 2023, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Randall W. Brown, KS #17905 | Stephen C. Thornberry, KS #17494
THORNBERRY BROWN, LLC
4550 Main Street, Suite 205
Kansas City, Missouri 64111
randy@thornberrybrown.com | steve@thornberrybrown.com
Tel: (816) 531-8383 | Fax: (816) 531-8385
ATTORNEYS FOR PLAINTIFF

                                            **s/David R. Cooper**